**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUL 09 2012

JAMES W. McCORMACK, CLERK
By: [signature]
DEP CLERK

BRANDON SCROGGIN
PLAINTIFF
PRO-SE
_______________________________/

VS **CASE NO. 3:12-CV-00128-SWW**

CREDIT BUREAU OF JONESBORO, INC.
DEFENDANT
_______________________________/

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to rule 15(a)(1)(b), Pro-Se Plaintiff Brandon Scroggin (hereinafter "Plaintiff"), does hereby as a matter of course amend his original complaint against Credit Bureau of Jonesboro Inc. (hereinafter "Defendant"). Plaintiff is timely amending his complaint as no more than 21 days have passed since the responsive pleading, Defendant's answer, has been filed with this Court.

The Defendant, in their answer to Plaintiff's original complaint, pleaded the Plaintiff "failed to state a claim for which relief may be granted" The Plaintiff finds it incredibly hard to comprehend Defendant's pleading of the non-waivable defense of failure to state a claim, due to Plaintiff's detailed factual pleading with specific; statute, allegations, case precedent citing the United States Supreme Court, detailed prayer for relief and Plaintiff's pleading being much more than labels and conclusions and a formulaic recitation of the elements of a cause of action.

However, the Plaintiff does have the need to amend his complaint for matters unrelated to Defendant's allegation of failure to state a claim. Therefore, in an effort to "cure" any defects which the Defendant alleges, assist the Defendant in being properly put on notice as to Plaintiff's allegations against the Defendant, the Plaintiff, while he feels his original complaint more than met his pleading

burden under ***Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)*** and ***Ashcroft v. Iqbal, 556 U.S. 662 129 S. Ct. 1937 (2009),*** is amending his original complaint to plead even more plausible factual content, including exhibits, which under ***M.M. Silta, Inc. v. Cliffs, Inc., 616 F.3d872 (8th Cir. 2010) (citing Fed. R. Civ. P. 10(c) and Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010),*** the Plaintiff respectfully requests this Honorable Court to review. Plaintiff is also pleading further factual allegations when accepted as true on its face will allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged in Plaintiff's amended complaint and show that success on the merits is more than a sheer possibility.

## PRELIMINARY STATEMENT

This action arises out of the facts and circumstances surrounding the collection of an alleged consumer debt. Pro-se Plaintiff Brandon Scroggin, an individual, on this 9th day of July, 2012, brings this amended claim against Credit Bureau of Jonesboro Inc., for statutory and actual damages, as well as attorney fees and costs for this litigation for violations of the *Fair Debt Collections Practices Act § 15 U.S.C. 1692 et seq* (hereinafter "FDCPA"), *Arkansas Fair Debt Collections Practice Act § A.C.A. 17-24-501 et seq* (hereinafter "AFDCPA"), *Arkansas Collection Agency Act § A.C.A. 17-24-101 et seq* (hereinafter "ACAA"), and the *Arkansas Deceptive Trade Practices Act, § A.C.A. 4-88-101 et seq* (hereinafter *"ADTPA"*).

## JURISDICTION AND VENUE

(1) Jurisdiction is conferred on this Court under *15 U.S.C. § 1692k(d)* and *28 U.S.C. § 1331.*

(2) As Plaintiff's state claims are related to Plaintiff's federal claims, and Plaintiff's state claims are inextricably entwined and arises out of a common nucleus of related facts, forms part of the same controversy under Article III of the United States Constitution, are not complex or novel and are straightforward, this Court has supplemental jurisdiction to hear and adjudicate Plaintiff's state claims against the Defendant under *28 U.S.C. § 1367.*

(3) Venue is proper as all alleged conduct took place while the Plaintiff was residing in Jonesboro,

Arkansas, and while the Defendant was conducting business in Jonesboro, Arkansas.

**PARTIES**

(4) The Plaintiff is a natural person residing in the city of Jonesboro, Craighead County, Arkansas and was a "consumer" at all times as alleged in this amended complaint, in so far as "consumer" is defined by the *FDCPA 15 U.S.C. § 1692(a)(3)*, and the AFDCPA, *A.C.A. § 17-24-502(2).*

(5) The Defendant, with a primary place of business while conducting business in the state of Arkansas, at 109 East Jackson Street, Jonesboro, AR 72401, at all times as alleged in this complaint was acting as a "collection agency" in so far as "collection agency" is defined by the ACAA, *A.C.A. § 17-24-101(1),* a "debt collector" in so far as "debt collector" is defined by the *FDCPA, 15 U.S.C. § 1692(a)(6),* and under the AFDCPA, *A.C.A. § 17-24-502(5),* and was attempting to collect a "debt" in so far as "debt" is defined by the FDCPA, *15 U.S.C. § 1692(a)(5),* and under the AFDCPA, *A.C.A. § 17-24-502(4),* which was allegedly due a "creditor" in so far as "creditor" is defined by the ACAA, *A.C.A. § 17-24-101(1),* the FDCPA, *15 U.S.C. § 1692(a)(4),* and the AFDCPA, *A.C.A. 17-24-502(3)(a).*

(6) Plaintiff expects to join other parties, under rule 20 of the federal rules of civil procedure, which are or were employees of the Defendant, after their true identities and the nature of their involvement with the Plaintiff's account is properly determined during discovery. "An employee can not escape liability under the FDCPA merely because, in mailing letters to debtors, he was merely following established office procedure with no intent to violate the FDCPA." ***See, Newman v. Checkrite California, 912 F.Supp. 1354 (E.D.Ca. 1995);*** Also see, ***West v. Costen, 558 F.Supp. 564 (W.D.Va. 1983); Drennan v. Van Ru Credit Corp.,* 950 F.Supp. 858 (N.D.Ill. 1996); *Ditty v. Checkrite, Ltd., Inc.,* 973 F.Supp. 1320 (D.Utah 1997); *Russell v. Goldman Roth Acquisitions, LLC (No. 1-10-cv-1224; March 12, 2012; Maloney, J.); Blakemore v. Pekay, 895 F.Supp. 972, 977 (N.D. Ill.1995); "Teng v. Metropolitan Retail Recovery Inc., 851 F.Supp 61, (E.D.N.Y.1994);***

(7) Plaintiff, under rule 18 of the federal rules of civil procedure, expects to plead additional causes

of action; specifically, but not limited to, claims for violations of the Fair Credit Reporting Act. Plaintiff has disputed the Defendant's improper and erroneous reporting on Plaintiff's credit report. However, any possible causes of action at the time of filing this amended complaint are not ripe to be pleaded. Therefore, Plaintiff expects additional parties to be joined which are unknown parties at this time, specifically the party or parties responsible for the erroneous reporting on Plaintiff's credit report.

## STATUATORY STRUCTURE OF THE FDCPA

(8) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (7).

(9) The FDCPA is a strict liability statute and is to be liberally construed in favor of consumers to effect its purpose, ***See, Picht v. Jon R. Hawks, Ltd, 236 F.3d 446, 451 (8th Cir. 2001).*** "The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors,' and debt collectors are liable for failure to comply with 'any provision' of the Act." ***See, Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir. 2006).***

(10) When interpreting the FDCPA, the plain language of the statute is to be used. "With any question of statutory interpretation, the court begins its analysis with the plain language of the statute." ***See, Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011).***

(11) Under the FDCPA, district courts are to employ and use the "unsophisticated-consumer" standard when analyzing FDCPA claims and whether conduct violates the FDCPA is to be determined by analyzing the conduct from the perspective of the least sophisticated consumer. ***See, Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir. 2000); Peters v. General Service Bureau, Inc., 277 F. 3d 1051, 1055 (8th Cir. 2002); Freyermuth v. Credit Bureau Servs.,Inc., 248 F.3d 767, 771 (8th Cir. 2001) (quoting Duffy v. Landberg, 215 F.3d 871, 873 (8th Cir.2000); and Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317-318 (8th Cir.2004).***

(12) A debtor's conduct, knowledge of the law, lack of assisting the debt collector in complying with the FDCPA, lack of complying with a debt collectors demands with no statutory authority backing such

demands, any alleged unclean hands or culpability on the part debtor, or the validity of the underlying debt are irrelevant in a FDCPA action.

(13) "Impermissible practices include harassing, oppressive or abusive conduct; false, deceptive or misleading representations; and unfair or unconscionable collection methods, the case law on this issue focuses on the "debt collector's actions," and whether an unsophisticated consumer would be harassed, misled or deceived by them." ***See, Freyermuth v. Credit Bureau Services, Inc., 248 F3d 767, 771 (8th Cir. 2001).*** "No section of the FDCPA requires an inquiry into the worthiness of the debtor or purports to protect only deserving debtors. The FDCPA protects all consumers, from the gullible to the shrewd." ***See, Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997).*** The focus is on the debt collector's conduct, not the consumer's. ***See, Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998).***

(14) Under the FDCPA, *15 U.S.C. § 1692f,* a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. "Statutory proscriptions using general terms such as unfairness are to be given effect by considering public values beyond simply those enshrined in the letter or encompassed in the spirit of he statute." ***See, Federal Trade Commission v. Sperry & Hutchinson Co.,* 405 U.S. 233 S. Ct. (1972).** "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." ***See, Connecticut Nat'l Bank v. Germain, 112 S. Ct. 1146, 1149 (1992)."*** "When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." ***See, Arkansas Supreme Court, Farrell v. Farrell, 365 Ark. 465, 231 S.W.3d 619. (2006).***

(15) Under the FDCPA, *15 U.S.C. § 1692c(c), i*f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except -

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to advise the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

(16) "Other than as permitted by 1692c(c), a debt collector who has received a cease communications order from a debtor must not contact the debtor unless it has received a "clear" waiver of that order." ***See, Clark v. Capital Credit & Collection Services, 460 F.3d 1162 (2006); and Herbert v. Monterey Financial Services, Inc., 863 F.Supp. 76 (D. Conn. 1994).***

(17) Where waivers are permissible, they are enforced only if the waiver was "knowing" or "intelligent" Which means that the individual waiving a statutory right must have "sufficient awareness of the relevant circumstances and likely consequences" of his decision. ***See, Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L. Ed. 2D 747 (1970).***

(18) In a FDCPA action, there is an even higher burden and a heightened standard of volunteerism in determining if a consumer has waived a right or protection under the FDCPA, as the court shall measure the behavior of the consumer under the rubric of the least sophisticated consumer. ***See, E.g., Baker v. G.C. Services Corp.,677 F.2d 775-78 (9th Cir.1982); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222, 12227 (9th Cir. 1988); Clomon v. Jackson, 988 F.2d 1314, 1318-19 (2d Cir.1993).*** "We will enforce a waiver of the cease communication directive only where the least sophisticated debtor would understand that he or she was waiving his or her rights under § 1692c(c)." ***See, Clark v. Capital Credit & Collection Services, 460 F. 3d 1162.***

(19) Under the FDCPA § 15 U.S.C. 1692c(b), without the prior consent of the consumer given directly to the debt collector, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer.

(20) Under the FDCPA, 15 U.S.C. § 1692(a)(2) "communication" means the conveying of information regarding a debt "directly" or "indirectly" to any person through any medium.

(21) A voice mail or answering machine message is a "communication" under the FDCPA. ***See, Foti v. NCO Financial Systems, Inc., 424 F. Supp. 2d 643, 654-55 (S.D.N.Y. 2006); Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1359 (N.D. Ga. 2008); Mark v J.C. Christensen & Associates., 09-100, 2009 U.S.Dist. LEXIS 67724 (D.Minn. Aug. 4, 2009); and Thomas v. Consumer Adjustment Co., 579 F. Supp. 2D 1290, 1296-97 (E.D. Mo. 2008).***

(22) Under the FDCPA, leaving a voice mail message which "identifies the consumer by name" as the intended target of the call and states "this is an attempt to collect a debt" conveys substantive information about the message, conveys more information than would be available from a hang-up or missed call and is a "communication in connection with the collection of a debt." ***See, Zortman v. J.C. Christensen & Assocs., Inc., 2011 U.S. Dist. LEXIS 44982 (D. Minn. Apr. 26, 2011).***

(23) Under the FDCPA, there is not a "requirement" "right" or "entitlement" for a debt collector to communicate with consumers, and/or leave voice mail messages for consumers.

(24) A bill has been introduced by Representative Barney Frank, H.R. 4101, 112th Cong. (2012), which contains language explicitly permitting debt collectors to leave voice mail messages for consumers which will shield a debt collector from third party disclosure liability. However, Representative Frank's bill is just that, a bill, and not an enacted law.

(25) "A legal claim has been stated when a consumer alleges third party disclosure even if the debt collector has left a warning or a disclaimer that any third party should hang up the phone or not continue to listen to the message." ***See, Leahey v. Franklin Collection Service, Inc. 756 F. Supp. 2D 1322- Dist. Court, ND Alabama 2010.*** "Calling automated telephone messages is an inherently risky method of communication and debt collectors use such a mode of communication at their peril." ***See, Berg v. Merchants Assoc. Collection Div.,Inc., 586 F. Supp. 2d 1336, 1344 (S.D. Fl. 2008).***

(26) No section of the FDCPA shifts the burden to the consumer where a consumer "shall" comply with unilaterally imposed rules or restrictions, with no statutory authority, demanded by a debt collector as to how a consumer shall conduct themselves in their own home.

(27) The "rock and a hard place" or "greater evil" argument when deciding what message, if any, is to be left for a consumer has been universally rejected by every court in the United States. "It does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." ***See, FTC v. Colgate-Palmolive Co., 380 U.S. 374, 393, 85 S. Ct. 1035, 13 L.Ed. 2D 904 (1965).*** "The Defendant has been cornered between a rock and a hard place, not because of any contradictory provisions of the FDCPA, but because the method they have selected to collect debts has put them there. ***See, Leyse v. Corporate Collection Services, Inc. 545 F.Supp.2d 334 (S.D. New York 2008).***

(28) The business of operating as a collection agency and/or a being a debt collector is a one-hundred percent voluntary choice and nobody is forced into or drafted into the debt collection business.

(29) Under the FDCPA, if the offending conduct is not unreasonable is not a defense. ***See, Fox v. Citicorp Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994).***

(30) "The bona fide error defense in the context of a strict liability statute requires the showing of procedures reasonably adapted to avoid any such error and requires more than a mere assertion to that effect. The procedures themselves must be explained, along with the manner in which they were adapted to avoid the error." ***See, Wilhelm v. Credico, Inc., 519 F.3d 416, 421 (8th Cir. 2008).***

(31) "We have previously addressed the use of the bona fide error defense in cases of mistake in legal judgment and concluded that "reliance on the advice of counsel or a mistake about the law is not protected by the bona fide error defense." ***See, Hulshizer v. Global Credit Servs., Inc., 728 F.2d 1037, 1038 (8th Cir. 1984).*** "Hulshizer remains the law of this Circuit." ***See, United States v. Reynolds, 116 F.3d 328, 329 (8th Cir. 1997).*** "The bona fide error defense is limited to clerical errors. The bona fide error defense does not apply to mistakes of law." ***See, Picht v. Jon R. Hawks, Ltd., 236 F. 3d 446, 451 (8th Cir. 2001).***

(32) This case presents the question whether the "bona fide error" defense applies to a violation resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA. "We

conclude it does not." ***See, Jerman v. Carlisle, McNellie, Rini, Kramer & Ulnch LPA, No. 08-1200, 130 S. Ct. 1605; 176 L Ed. 2D 519; 2010 U.S. Lexis 3480; (April 21, 2010).***

**STATUTORY STRUCTURE ACAA**

(33) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (32).

(34) Under the ACAA, *A.C.A. § 17-24-101(1),* "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(35) Under the ACAA, *A.C.A. § 17-24-101 XIV(b),* when a collection agency communicates with a debtor, the Agency "must" disclose the name of the creditor. If the Agency does not, the Agency is guilty of engaging in improper communication with a consumer.

(36) Under the ACAA, *A.C.A. § 17-24-101 XVI(b),* improper communication with a debtor "shall be" considered and treated as engaging in an unethical practice or resorting to illegal means or method of collection.

**STATUTORY STRUCTURE OF THE AFDCPA**

(37) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (36).

(38) Under the AFDCPA, *A.C.A. 17-24-101* the terms debt, consumer, debt collector, creditor, and communication have the exact meaning as defined under the *FDCPA, § 15 U.S.C. 1692.*

(39) Under the AFDCPA, *A.C.A. § 17-24-504a(c),* as it relates to ceasing communications after a refusal to pay directive has been received, the exact statutory prohibitions as under the *FDCPA 15 U.S.C. § 1692c(c)* are used.

(40) Under the AFDCPA, *A.C.A. § 17-24-504(a)(b)* as it relates to illegal contact with third parties, the exact statutory prohibitions as under the *FDCPA, 15 U.S.C. § 1692c(b)* are used.

(41) Under the AFDCPA, *A.C.A. § 17-24-507(a)*, as it relates to using unfair or unconscionable means in the collection of a debt, the exact statutory prohibitions as under the FDCPA, *15 U.S.C. § 1692(f)* are used.

**STATUATORY STRUCTURE OF THE ADTPA**

(42) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (41).

(43) Under the ADTPA, *A.C.A. § 4-88-107(a)(10),* engaging in any unconscionable, false, or deceptive act or practice in business, commerce or trade violates the ADTPA.

(44) A violation of the FDCPA is a per se violation of the ADTPA. ***See McDaniel vs BC Legal Group, P.C., Pulaski County Arkansas Circuit Court, sixth division, CV-2007-16311.***

**FACTS**

(45) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (44).

(46) The Plaintiff, on or about the date of March 5, 2012, received a written initial communication from the Defendant in the form of a debt collection letter. This initial communication contained no FDCPA or Arkansas state law violations and advised the Plaintiff of his rights under the FDCPA.

(47) In the initial communication, the Defendant stated they were a debt collector and were demanding payment from the Plaintiff for an alleged past due consumer debt which was incurred for the personal benefit of the Plaintiff and was owed to a third party other than the Defendant.

(48) On the date of March 26, 2012, and in response to the Defendant's letter on or about March 5, 2012, the Plaintiff sent by certified mail to the Defendant, a written communication stating that the Plaintiff "refused to pay the debt," (*See Exhibit A attached hereto and incorporated by reference*) and while in no way required by law advised the Defendant of the reason for the refusal to pay.

(49) Plaintiff's refusal to pay letter *(Exhibit A)* triggered FDCPA further communication protections and put into place a cease communications directive under *15 U.S.C. § 1692c(c).*

(50) The cease communications directive was received by the Defendant on March 30, 2012. *(See Exhibit B attached hereto and incorporated by reference).*

(51) On the date of April 27, 2012, on or around 11:52 am, a debt collector working under the direct authority and supervision of the Defendant, advising her name was Ally, voluntarily, while uninvited and in direct violation of the cease communication directive lawfully asserted by the Plaintiff, intruded

into the home of the Plaintiff and illegally further communicated with the Plaintiff by leaving a voice mail message in connection with the collection of a debt *(See Exhibit C attached hereto and incorporated by reference. Plaintiff also has the recorded voice mail preserved for trial).*

(52)    Debt Collector Alley's further communication with the Plaintiff was not one of the three, strictly defined in plain English and written in unambiguous language by the legislature, exceptions allowing a debt collector to further communicate with a consumer which had asserted a cease communications directive and the directive had been received by the debt collector.

(53)    Debt Collector Ally's illegal conduct, as she should not have been communicating further with the Plaintiff except under one of three statutory defined communications, included, but was not limited to, making the following disclosures on the Plaintiff's voice mail (It should also be noted Plaintiff's voice mail greeting message does not even give the Plaintiff's name and only tells the caller they have reached 870-897-3872);

-    Debt Collector Ally was calling in an effort to communicate with Brandon Scroggin (Debt Collector Ally specifically stated, by first and last name, the Plaintiff).

-    Debt Collector Ally was calling and communicating from the Credit Bureau of Jonesboro (Plaintiff asks the court to note the name of the Defendant and it's correlation if the least sophisticated would assume, by the name of the Defendant alone, if the nature of the call was in connection with the collection of a debt).

-    Debt Collector Ally was a debt collector.

-    Debt collector Ally was attempting to collect a debt

-    Debt collector Ally was calling about "personal" and "private information"

-    Two different disclaimers that Debt Collector Alley was about to violate the FDCPA by leaving a message in connection with the collection of a debt and that the Plaintiff should listen to the message in private.

-    The Plaintiff was to return the phone call to Credit Bureau of Jonesboro (leaving enough

information to incite the indented receptant of the message to return the communication).

(54) The illegal further communication by Debt Collector Alley was heard by a third party, Kirby Wilson, who was an invited guest in the home of the Plaintiff and was not an uninvited intruder violating the Plaintiff's rights.

(55) On or about the date of May 10, 2012, the Defendant, again, illegally further communicated with the Plaintiff by; willfully, recklessly and with complete disregard to the cease communications directive lawfully asserted by the Plaintiff, sent another collection letter to the Plaintiff demanding payment from the Plaintiff *(See Exhibit D attached hereto and incorporated by reference).*

(56) Prior to receiving the Defendant's further illegal communications, other than the cease communications directive, the Plaintiff had made no contact with the Defendant or the third party creditor, made no payment on the alleged debt to the Defendant or the third party creditor and in no way when using the rubric least sophisticated standard, knowingly, intelligently, clearly and convincingly with sufficient awareness of the relevant circumstances and likely consequences, voluntary relinquished or "waived" the written cease communicates directive which the Plaintiff had legally asserted and the Defendant had been made aware.

(57) On the date of April 27, 2012, and May 14, 2012, and after receiving illegal further communications from the Defendant, including having a third party illegally made aware of the Plaintiff's alleged owing of a debt to the Defendant, the Plaintiff experienced extreme stress, embarrassment, shock, the pre-existing condition of anxiety was re-aggravated and the Plaintiff experienced severe anxiety (panic attack), a condition which the Plaintiff has been under a medical doctor's care for in the past, including the Plaintiff being seen in the emergency room three times for severe anxiety attacks.

## CAUSES OF ACTION

## COUNT 1 VIOLATION OF THE ACAA

(58) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (57).

(59) On April 27, 2012, the Defendant violated the ACCA, specifically *A.C.A. § 17-24-101 XIV(b).*

(60) The Defendant improperly communicated with the Plaintiff, when they failed to disclose in their communication with the Plaintiff the name of the creditor, and were required by law to disclose the name of the creditor in their communication with the Plaintiff (even though the communication was illegal under another federal statute).

(61) Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the ACAA, specifically A.C.A. § 17-24-101 XIV(b), and while not only is it plausible the Defendant violated the ACAA as alleged in the complaint, it is more likely than not the Defendant violated the ACAA as alleged in the complaint.

**COUNT 2 VIOLATIONS OF THE FDCPA**

(62) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (61).

(63) On the date of April 27, 2012, the Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(c).*

(64) The Defendant violated the cease communications directive which had been lawfully asserted by the Plaintiff and received by the Defendant. The Defendant's further communication, via a voice mail message, with the Plaintiff was not one of the statutory defined exceptions to the cease communications directive.

(65) Under the FDCPA and the doctrine of expressio unius est exclusio alterius, the Defendant's further communication was illegal communications.

(66) Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(c),* and while not only is it plausible the Defendant violated the FDCPA as alleged in the complaint, it is more likely than not the Defendant violated the FDCPA as alleged in the complaint.

(67)    Plaintiff incorporates by reference and re-alleges paragraphs (1) through (66).

(68)    The Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(c).*

(69)    On or about the date of May 14, 2012, the Defendant violated the cease communications directive which had been lawfully asserted by the Plaintiff and received by the Defendant.  The Defendant's further communication, via U.S. Postal Service, with the Plaintiff was not one of the statutory defined exceptions to the cease communications directive.

(70)    Under the FDCPA and the doctrine of expressio unius est exclusio alterius, the Defendant's further communication was illegal communication.

(71)    Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(c),* and while not only is it plausible the Defendant violated the FDCPA as alleged in the complaint, it is more likely than not the Defendant violated the FDCPA as alleged in the complaint.

(72)    Plaintiff incorporates by reference and re-alleges paragraphs (1) through (71).

(73)    The Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(b).*

(74)    On the date of April 27, 2012, the Defendant, while already acting in violation of *15 U.S.C. § 1692c(b),* chose to voluntary engage in conduct that went perilously close to another proscribed conduct, but crossed the line when the Defendant communicated in connection with the collection of a debt with a party other than the Plaintiff when no permission had been expressly given to the Defendant by the Plaintiff to do so.

(75)    Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the FDCPA, specifically *15 U.S.C. § 1692c(b),* and while not only is it plausible the Defendant violated the FDCPA as alleged in the complaint, it is more likely than not the Defendant violated the FDCPA as alleged in the complaint.

(76) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (75).

(77) The Defendant violated the FDCPA, specifically *15 U.S.C.§ 1692f.*

(78) The Defendant, on the date of April 27, 2012, on or around 11:54 am, violated the ACAA by engaging in improper communication with the Plaintiff (did not disclose the name of the creditor) and therefore committed a per se violation of the FDCPA prohibition against using unfair means to collect or attempt to collect a debt.

(79) Since improper communications, by statute, "shall be" considered an unethical or illegal means of collection, the improper communications state law violation rises to the level of an FDCPA violation under ***Carlon vs First Revenue Assurance, 359 F3d. 1015 (8th Cir. 2004).***

(80) Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the FDCPA, specifically *15 U.S.C.§ 1692f,* and while not only is it plausible the Defendant violated the FDCPA as alleged in the complaint, it is more likely than not the Defendant violated the FDCPA, as alleged in the complaint.

**COUNT 3 VIOLATIONS OF THE AFDCPA**

(81) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (80).

(82) The Defendant violated the AFDCPA, specifically *A.C.A. § 17-24-504(a)(c).*

(83) The Defendant violated the cease communications directive which had been lawfully asserted by the Plaintiff and received by the Defendant. The Defendant's further communication, via a voice mail message, with the Plaintiff was not one of the statutory defined exceptions to the cease communications directive.

(84) Under the AFDCPA and the doctrine of expressio unius est exclusio alterius the Defendant's further communication was an illegal communication.

(85) Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the AFDCPA,

specifically A.C.A. *§ 17-24-504(a)(c),* and while not only is it plausible the Defendant violated the AFDCPA as alleged in the complaint, it is more likely than not the Defendant violated the AFDCPA as alleged in the complaint.

(86)    Plaintiff incorporates by reference and re-alleges paragraphs (1) through (85).

(87)    The Defendant violated the AFDCPA, specifically *A.C.A. § 17-24-504(a)(c).*

(88)    The Defendant violated the cease communications directive which had been lawfully asserted by the Plaintiff and received by the Defendant. The Defendant's further communication, via U.S. Postal Service, with the Plaintiff was not one of the statutory defined exceptions to the cease communications directive.

(89)    Under the AFDCPA and the doctrine of expressio unius est exclusio alterius Defendant's further communication was an illegal communication.

(90)    Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the AFDCPA, specifically A.C.A. *§ 17-24-504(a)(c),* and while not only is it plausible the Defendant violated the AFDCPA as alleged in the complaint, it is more likely than not the Defendant violated the AFDCPA as alleged in the complaint.

(91)    Plaintiff incorporates by reference and re-alleges paragraphs (1) through (90).

(92)    The Defendant violated the AFDCPA, specifically *A.C.A.§ 17-24-504(a)(b).*

(93)    On the date of April 27, 2012, the Defendant, while already acting in violation of A.C.A. *§ 17-24-504(a)(c),* chose to voluntary engage in conduct that went perilously close to another proscribed conduct, but crossed the line when the Defendant communicated in connection with the collection of a debt with a party other than the Plaintiff when no permission had been expressly given to the Defendant by the Plaintiff to do so.

(94)    Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the AFDCPA,

specifically A.C.A. *§ 17-24-504(a)(b),* and while not only is it plausible the Defendant violated the AFDCPA as alleged in the complaint, it is more likely than not the Defendant violated the AFDCPA as alleged in the complaint.

**COUNT 4 VIOLATIONS OF THE ADTPA**

(95) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (94).

(96) The Defendant has violated the ADTPA, specifically *A.C.A. § 4-88-107(a)(10).*

(97) The Defendant's numerous alleged violations of the FDCPA, as pleaded in this complaint, are per se violations of the ADTPA.

(98) The Plaintiff submits, although there is no case law on the issue as to a violation of the AFDCPA also being a per-se violation of the ADTPA, ***McDaniel v JBC Legal Group, P.C., Pulaski County Arkansas Circuit Court, sixth division, CV-2007-16311***, is persuasive, and the Plaintiff submits a violation of the AFDCPA also triggers a per-se violation of the ADTPA.

(99) Therefore, by their voluntary conduct which the Defendant had complete discretion, it is plausible, when taking the allegations on their face as true, the Defendant violated the ADTPA, specifically *A.C.A. § 4-88-107(a)(10),* and while not only is it plausible the Defendant violated the ADTPA as alleged in the complaint, it is more likely than not the Defendant violated the ADTPA as alleged in the complaint.

**DAMAGES AND PRAYER FOR RELIEF**

(100) Plaintiff incorporates by reference and re-alleges paragraphs (1) through (99).

(101) Under the FDCPA, *15 U.S.C. § 1692k(a)(2),* any debt collector who fails to comply with any provision of the FDCPA with respect to any person is liable to such person for statutory damages up to $1,000.

(102) As to statutory damages under the FDCPA, the Plaintiff prays for relief and judgment in the amount of $1000.00 (one-thousand dollars).

(103) Under the FDCPA, *15 U.S.C. § 1692k(a)(1),* any debt collector who fails to comply with any

provision of the FDCPA with respect to any person is liable to such person for actual damages.

(104) State law requirements regarding the proof of intentional infliction of emotional distress or shock and outrage, are not applicable to actual damages under the FDCPA. ***See, Millstone v. O'Hanlan Reports. Inc., 528 F.2d 829 (8th Cir. 1976); Smith v. Law Offices of Mitchell N. Kay, 124 B.R. 182, 185 (D.Del 1991); Crossley v. Lieberman, 90 B.R. 682 (E.D.Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989); Venes v. Professional Service Bureau, 353 N.W. 671 (Minn. App. 1984)***. Furthermore, the Defendant is liable to the Plaintiff for emotional distress under the egg shell doctrine.

(105) As to the actual damage of emotional distress under the FDCPA, the Plaintiff prays for relief and judgment in the amount of $5,000.00 (five-thousand dollars).

(106) Under the FDCPA, *15 U.S.C. § 1692k(a)(3),* a Plaintiff who is successful in a FDCPA action is entitled to attorney fees and costs for the litigation.

(107) Plaintiff prays for relief and judgment for attorney fess and costs to bring this action under the FDCPA.

(108) Under the AFDCPA, *A.C.A. § 17-24-512(a)(2),* any debt collector who fails to comply with any provision of the AFDCPA with respect to any person is liable to such person for statutory damages up to $1,000. *See A.C.A. § 17-24-512(a)(2).*

(109) As to statutory damages under the AFDCPA, the Plaintiff prays for relief and judgment in the amount of $1000.00 (one- thousand dollars).

(110) Under the ADTPA, *A.C.A. § 4-88-113(f),* any person who suffers actual damage or injury as a result of an offense or violation under the ADTPA has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees.

(111) As to the actual damage of emotional distress under the ADTPA, the Plaintiff prays for relief and judgment in the amount proven at trial.

(112) Plaintiff prays for any other relief that the Court deems appropriate.

**DEMAND FOR TRIAL BY JURY**

(113) Plaintiff demands trial by jury for all issues triable by jury.

Respectfully submitted this 9h day of July, 2012.

Brandon Scroggin
Pro-Se
526 West Monroe
Jonesboro, AR. 72401
870-897-3872

**CERTIFICATE OF SERVICE**

I, Brandon Scroggin, do hereby certify a copy of this Amended Complaint was emailed to Ms. Rebecca Worsham, attorney for the Defendant, with a request for confirmation from Ms. Worsham of receipt. . On the date of June 26, 2012, Ms. Worsham agreed in writing, as did the Plaintiff, that service of pleadings were acceptable via email.

PLAINTIFF'S EXHIBIT

(A)

March 26, 2012

Dear Credit Bureau of Jonesboro,

In response to the letter you sent me that has dated February 27, 2012, and the account number from
you of 2249932.  I refuse to pay this debt because I don't think I owe that because I was only there for
an hour and then left after I started feeling better.

Thank You,

Brandon Scroggin

PLAINTIFF'S EXHIBIT (B)

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X LeAnn Mansfield ☐ Agent ☐ Addressee<br>B. Received by (Printed Name) LeAnn Mansfield C. Date of Delivery |
| 1. Article Addressed to: CREDIT BUREAU OF Jonesboro P.O. Box 1305 Jonesboro, AR. 72401 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| | 3. Service Type ☒ Certified Mail ☐ Express Mail ☐ Registered ☐ Return Receipt for Merchandise ☐ Insured Mail ☐ C.O.D. |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number (Transfer from service label) 7011 2000 0001 4475 5487 | |

PS Form 3811, February 2004 Domestic Return Receipt 102595-02-M-1540

PLAINTIFF'S EXHIBIT (C)

VOICE MAIL LEFT FOR THE PLAINTIFF BY THE DEFENDANT
ON THE DATE OF APRIL 27, 2012, ON OR AROUND 11:54 AM

**Defendant-** This message is for Brandon Scroggin, if you are not Brandon, please hang up and disconnect.

If you are Brandon, please continue to listen to this message. There will now be a three second pause in the message.

By continuing to listen to this message, you acknowledge you are Brandon Scroggin. You should not listen to this message where other people can hear it, as it contains personal and private information. There will now be a three second pause where you can listen to it in private.

This is Ally, from the Credit Bureau of Jonesboro, I'm a debt collector, this is an attempt to collect a debt and any information obtained will be used for that purpose. Please contact me about an important business matter at 336-1146.

Case 3:12-cv-00128-SWW Document 1-4 Filed 05/25/12 Page 1 of 1

PLAINTIFF'S EXHIBIT (D)

109 East Jackson
PO Box 1305
Jonesboro AR 72403-1305
RETURN SERVICE REQUESTED

MAY 08 2012

**Credit Bureau of Jonesboro**
109 East Jackson • PO Box 1305
Jonesboro, AR 72401-3107
(870) 932-6699 • (870) 336-1146
Toll Free: (800) 495-6646
www.cbjinc.com

Re: ST BERNARDS MEDICAL CTR
Client Acct #: SV0121445142
Balance Due: $1219.50

2249932 - 2 - 4362
BRANDON SCROGGIN
526 W Monroe Ave
Jonesboro AR 72401-2767

Credit Bureau of Jonesboro
109 East Jackson
PO Box 1305
Jonesboro AR 72403-1305

*** Detach Upper Portion and Return with Payment ***

4362-JONE1002-Y11B429AA4

Re: ST BERNARDS MEDICAL CTR
Client Acct #: SV0121445142
Balance Due: $1219.50
Account No.: 2249932

For the purpose of this communication, we are acting as debt collectors, this is an attempt to collect a debt and any information obtained will be used for that purpose.

DEFAULT NOTICE

Your balance is still in default. This creditors instructions are to collect this debt.

Please contact our office at your earliest convenience so that we can assist you in resolving this matter.

If you have already mailed your payment please disregard this notice.

IF YOU WISH TO PAY BY MASTERCARD, VISA, DISCOVER OR AMERICAN EXPRESS, FILL IN THE INFORMATION BELOW AND RETURN THE ENTIRE LETTER TO US

Account Number ____ Payment Amount $ ____ Expire Date __/__

Card Holder Name ____ Signature of Card Holder ____

Payments may be made at our website at www.cbjinc.com