UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BRANDON SCROGGIN
PLAINTIFF
_____/

VS                    CASE NO. 3:12-CV-00128-SWW

CREDIT BUREAU OF JONESBORO, INC.
DEFENDANT
_____/

## AFFIDAVIT OF BRANDON SCROGGIN

1. I am over the age of eighteen and believe in the obligation of the oath.

2. I am the Plaintiff in this action against The Credit Bureau of Jonesboro.

3. I have never attend law school and am not an attorney-at-law.

4. I have no formal legal training, have never worked for an attorney or as a paralegal.

5. I have a deep respect for the United States legal system, It's judges, and rules of procedure.

6. I have appeared in court many times and have acted pro-se many times.  I have never been cited for contempt of court, been warned or cautioned, and have never violated a court order or a rule of procedure.

7. I do not plan on grand standing or disrespecting this Honorable Court in any way whats-so-ever. All of my pretrial actions and strategy are all part of an overall winning strategy that I'm employing, which I feel are within the rules of procedure and my rights as a citizen of the United States of America.

8. In all of my 6,500 posts on line that are referenced in Defendant's motion, there is not one post where I have told anybody to disrespect the courts or it's authority.  In fact, I routinely caution against arguing with the judge even if you know you are right and that is what we have appeals courts for.  I have never on any message board advised anybody to try and grand stand or showboat in court.  I always say winning takes care of that, and I believe that and I believe I am a winner.

9. I believe every citizen has a right of access to the courts and I believe strongly in my constitutional rights.

Exhibit 4-Page 1

10. I have reviewed the motion and brief filed by the Defendant and respond in turn and in detail below.

11. I will be personally present at the hearing which attorney Don Mixon, attorney for the Defendant, has requested, and will be available to stand before the court under oath and submit to questioning by any party.

12. Paragraph three of Defendant's motion states the Plaintiff was deposed and admitted to posting on Credit Info Center and Debtorboards. Both of these states are 100% true.

13. Paragraph four of Defendant's motion states my user name on both sites is Coltfan1972 and I post about twenty times a day. Both of these statements are 100% true.

14. Paragraph five of Defendant's motion accurately describes how Credit Info Center operates.

15. Paragraph six of Defendant's motion accurately states the number of posts I have made.

16. Paragraph seven of Defendant's motion states that I consider myself an expert on the FDCPA. I am an expert on the FDCPA.

17. Also stated in paragraph seven of Defendant's motion is that I refer to myself as the Robin hood of debtors. I do consider myself the Robin hood of debtors in that I take up for poor and uneducated people that are usually run over by savage debt collectors looking to pluck every last dollar from frighted poor and uneducated people.

18. Also stated in paragraph seven of Defendant's motion is that one of my cases went all the way to the Wyoming Supreme Court. Actually it was one of the cases that I assisted a friend of mine with by providing uncompensated research and opinions.

19. What the Defendant failed to add was the case was won and two lower courts orders were ordered vacated by the Wyoming Supreme Court and the Chief Justice of the Court wrote the opinion. Mr. James, the pro-se non attorney Robin hood of his own has submitted his affidavit, and the official court documents showing the claim I made was true.

20. Mr. James is a fine American and a champion of the poor and consider him a great friend. He and I knew we were right, because we refuse to lose and were not at all scared to go all the way to the Supreme Court. That's what winners do. I'm proud of Mr. James and proud I was able to assist this fine American.

21. I in no way regret making <u>any statement</u> in paragraph seven of Defendant's motion, stand by every statement and if given the opportunity will repeat it word for word in front of the Honorable Court and under oath. I do not distant myself from any statement contained in paragraph seven whats-so-ever.

22. Paragraph eight of Defendant's motion states that other members of CIC look to Plaintiff for advice on debt collection laws and is seen as in inspiration. This statement is 100% true. I receive numerous questions and requests for advice and am an inspiration to many on both boards.

23. Paragraph eight of Defendant's motion also states that one member even made a thread about how to hammer away at your creditors and why Coltfan is her hero. The reason is because I showed this

Exhibit 4-Page 2

poor consumer how to fight back and hammer away at her creditor and she won a full dismissal and victory, pro-se, and I am her hero, which is her right to have anybody be her hero she wishes. Personally, I'm honored to be her hero.  I find it comical that the defense would put this thread in their motion like there was something wrong with winning.   Winners win routinely, it's what we do, we are used to it on Credit Info Center and we proudly announce it.

24.  Paragraph nine of Defendant's motion states that I advise others to run up the other sides legal bills and be a complete nightmare and turn it into a circus.  That is 100% true.  If a creditor does not want to treat you fairly I encourage consumers to sue them or fight the creditors lawsuits against them which will cost the creditor a lot of money.  If the Defendant is not aware, litigation is costly.   In 2010, the New York Times did a story on me and it was called, "A Debt Collectors Worst Nightmare"

25.  I'm simply pointing out that you need to force a creditor to make a business decision if they want to keep trying to suck every last dollar out of you or they violate your rights.   I encourage consumers to use every legal rule, law, and procedure to their advantage but never file or do anything frivolous.  This was also stated in the deposition but for some reason did not make it into Defendant's motion and brief.  In other words Mr. Mixon cherry picked and took what I said out of context.   That is what people that are scared of the full truth and context do, in my personal non-attorney opinion.

26.  The Plaintiff is practicing what he preaches by not backing down against Defendant's ludicrous motion to dismiss and motion to censor me.  I hope the Defendant spends a great deal of money on this motion which they chose to file and which they chose to ask for a hearing four hours away.

27.  I also advise others to be a nightmare in the context of staying within the rules and the law.  Again I am practicing what I preach.  I truly hope that I am a complete nightmare to the Defendant and anytime they ever think about violating the FDCPA they remember me and they remember this experience as a complete nightmare.  I'm proud to be a nightmare to law breakers and don't back down from my statement one bit.  And if the other side wants to turn this into a "legal" circus by their own actions, I encourage that also.  They asked for the deposition, I just showed up.

28.  The Defendant's own actions has turned this into a circus. They only need to look in the mirror to find the guilty party for turning this into a circus as they define circus, not me.  Defense counsel did not take myself and my attorney serious to the point that a threat had to be made to get the court involved if they would not return our calls or emails to schedule <u>their deposition</u>.

29.  I had instructed my attorney to settle this action for $2,000.00, an amount way lower than my claim is worth, throughout the whole month of December because I needed Christmas money.  They would not return our calls, so now I don't need the money and I don't want to settle for way less than my claim is worth.  They only have themselves to blame that they are before this Honorable Court today.  They asked for this hearing, they filed this motion, and they are the ones causing financial harm and wasted time to themselves.  Look in the mirror and they will see the guilty party that has turned this into a circus as they define circus.

30.  The defense deposed a sophisticated consumer that is helping unsophisticated consumers which they severely under estimated and tried to intimidate.  In other words, they opened the can and now they get the whole can, and if that's a nightmare and/or legal circus for them I accept that and encourage others to do the same.

31.  I do not back down from any statement in paragraph fifteen and meant every word I said as long as

Exhibit 4-Page 3

all action is done legally and lawful. I don't think I should have to prosecute my case or assist my attorney in a way that suits Mr. Mixon. If he is not happy then I'm doing something right is my opinion. I'm glad he is upset and hope he keeps concentrating on me personally and not his client and how to actually win this lawsuit against me. The more he concentrates on me the less time he can devote to his client, which is fine with me.

32. Furthermore, the courts have recognized the need for private sophisticated consumers, like the Plaintiff, to take up for, help, or act as a Robin Hood on behalf of others.

"The FDCPA enlists the efforts of sophisticated consumers….as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." See, Jacobson V Healthcare Financial Services, Second Circuit Court of Appeals, 06-3417, 2008.

33. I'm proud to assist the least sophisticated consumers and hope this case stays fresh on the minds of the Defendant and their client for many years and causes them to think before they try to trample the rights of the poor and oppressed which they feel are not deserving of access to the courts because they don't like their style or they have not taken an "oath" I want to be a nightmare and a deterrent. I'm glad defense counsel has filed this motion as it just fuels my desire to win even more.

34. Paragraph ten of Defendant's motion states I sent defense counsel an email with a link to a thread I created. This is exactly what I did. I was asked about my online posting and I sent her an email that stated here is a direct link in case you have problems finding it.

35. Paragraph eleven of Defendant's motion states the thread was about the deposition That is exactly what the thread was about but it contained even more.

36. It contained posts from the day I found out I was going to be deposed and it contained many posts about how sorry they were going to be that they did not return our phone calls, emails, and letters but were crying because we would not settle, and that Mr. Mixon or Ms. Washburn refused to act professional and return a phone call.

37. Paragraph twelve of Defendant's motion sates that the Plaintiff hoped the deposition to be a train wreck and planned some one liners. That is exactly what the Plaintiff hoped for. The Plaintiff wanted the deposition to be a legal train wreck and the Plaintiff did plan some First Amendment one liners.

38. Paragraph thirteen of Defendant's motion states the Plaintiff stated he "divorced his wife because she went to Nashville, had a three some, I was not invited and I kinda wanted to be there for that."

39. That is exactly what my ex-wife did. She went to Nashville, had a three some, I was not invited, it is something I kinda of would have wanted to be there for and I divorced her for this. The case is Scroggin V Scroggin 60DR-03-528, Pulaski County, Third Circuit, 20th Division. I stated the same on the official court record if the defense wishes to obtain the transcript.

40. Paragraph fourteen of Defendant's motion talks about me having a friends with benefits relationship with my former apt manager and I refer to the sex as "banging" I did have a friends with benefits relationship with my former apt manager and I'm immature sometimes and refer to sex with no strings attached as banging. Also, I sometimes refer to it as "nailing" The manager, who is still the manager, and the defense is welcome to contact is Christy Simpson.

Exhibit 4-Page 4

41. Paragraph fourteen of Defendant's motion further states I bragged about making these vulgar one liners.  I did brag about the one liners but don't consider them vulgar whats-so-ever.  If Mr. Mixon finds them vulgar that is his right and I suggest he stay off the internet.

42. I refer to group sex as a three some and friends with benefits as banging.   It could possibly be immature, high-school locker room talk, but I'm generally immature and exercise my First Amendment right  to talk high-school locker room.    Surely an attorney that has been practicing as long as Mr. Mixon has heard more colorful terms other than "three some" and "banging"  They asked the question in a deposition.  They could have just as easy asked it in an interrogatory if they are so sensitive to such language.  It's the way I talk when I'm not in a courtroom.  I don't apologize for saying what I said.

43. I'm sure the court is aware of a different four letter word for sex that is commonly used that starts with an F.  That would have been vulgar.  The Plaintiff admits he is immature and has immature friends which he wanted to be so much cooler online with.  The Plaintiff was playing to the crowd as Mr. Fisher states in his affidavit.

44  Paragraph fifteen of Defendant's motion states comments I made about Ms. Worsham's weight and chest.   I said her weight was excellent, which it was because I thought she looked very fit and the perfect weight.  I also answered a question by a poster on the board and said she had a nice rack, referring to her chest.  The Plaintiff is a red blooded American and thinks defense counsel is pretty and has a nice figure or chest which I refer to by playing to the crowd in an immature manner by calling it a rack.

45. I don't back down from the statement and that's my opinion of Ms. Worshams appearance.  The comments were not made to her directly in person or on-line and were made in the context of being immature with a bunch of guys online and trying to be so much cooler on line.  My personal opinion is Ms. Worsham should take it as a compliment.

46. Paragraph sixteen of Defendant's motion states that I posted an emoticon that has the immature emoticon holding a sign that says I'd hit it (an immature reference to having consensual sex with another person) I posted that in response to the posters question about Ms. Worsham's appearance right after I said she had a nice rack.  The reason I said I'd hit it was because I would.

47. Paragraph seventeen of Defendant's motion is a post I made that says F U and up yours and does not spell out any vulgar words.  That was me playing the character which Mr. Fisher talks about in his affidavit.

48. I would like the court to note that I never disclosed the name of any party in my online posting.  Furthermore, I was flooded with emails and photo shopped pictures asking me to provide the Defendant's contact info and they would start bombarding them with childish and immature material.

49. I never disclosed any personal information about the defense and told all posters to keep any comments about then in the online threads only and not to call or email anybody other than me outside this thread.

50. As I've stated earlier, I'm highly respected on the board and to the best of my knowledge nobody from the website other than me or my attorney has contacted any party from the Defense, outside of the posting forum.  Even when I provided court documents to others, I redacted the personal information of

Exhibit 4-Page 5

Mr. Mixon and Ms. Washburn.

51. Paragraph seventeen of Defendant's motion further states I posted, "You're losers and you lost the minute I sued you"

52. I use some puffery and talk about telling the clerk to "stamp this lawsuit sister," which of course I did not really say to the court clerk. But it sure sounds so much cooler on line as opposed to "I sued them"

53. Furthermore, I called them losers because I think they are losers. I posted they lost the minute I sued them. I posted that because my opinion is they lost the minute I sued them. I don't sue somebody if I'm not going to win. I don't lose and it's because my cases are legally solid and I'm a winner. That makes them a loser the minute I sue them in my book.

54. Paragraphs nineteen through twenty one of Defendant's motion outlines what appears to be an oath or something that binds attorney's at law conduct and speech. I have not independently checked the accuracy of what defense counsel stated and assume that's what the oath states.

55. Paragraph twenty-two of Defendant's motion states me emailing Ms. Worsham violated the attorney's oath.

56. I have no idea if that is true, but for the sake of argument will assume it does violate the oath I never took or was aware of or want any part of.

57. Paragraph twenty-three of Defendant's motion states I can't flaunt the rules of professional responsibility. I'm not a professional.

58. I am exercising my First Amendment right to free speech and expression while not crossing the line into criminal statements or expression and I have no intention whats-so-ever to follow rules that I never agreed to follow or follow an oath I never took. Obviously I will cease any contact with any party that requests I do not further communicate with them. At the time of signing this affidavit, no such party has come forward.

59. Paragraph twenty-four and twenty-five of Defendant's motion cite precedent which I acknowledge is well settled.

60. Paragraph twenty-five of Defendant's motion also states I disrespected the Court. I have never appeared in federal court, appeared before the court in this matter, violated a court order or a rule of federal procedure.

61. The Defendant might be confusing his hurt feelings, anger, personal disgust, the fact their bluff was called and/or his opinions of the Plaintiff with disrespect.

62. I have the up-most respect for the court and will fully comply with any court order(s) and if I disagree with any order(s) I will still comply with them and respect the order(s) and appeal, as is my right and how our court system works. I love the United States court and legal system. It's for everybody, not just the elite that take an oath.

63. Furthermore, I ask the Court to take notice of the attached order from the Pulaski County Circuit

Exhibit 4-Page 6

Court, Hon. Jay Moody.  This was an FDCPA action where I was acting pro-se.  Judge Moody made a ruling from the bench which was wrong.

64.  I would ask the Court to consider if the Plaintiff is disrespectful as the Defense implies if Judge Moody, own his own motion to reconsider, would have reversed himself against a pro-se litigant after he ruled from the bench.

65.  The reason he reversed himself is due to the fact that I respectfully disagreed and knew how to properly preserve the record for appeal while also not appearing to try to show the judge up even though he was 100% wrong and had announced a ruling that I was 100% certain would be overturned on appeal.

66.  I showed respect for the Court and the Judge and preserved the record and at the next hearing Judge Moody even complimented me and told the other side he was wrong, Mr. Scroggin was correct and I have change my ruling accordingly.

67.  I can assure the court the attorneys for the other side did not like me anymore than Mr. Mixon and Ms. Washburn.  The appeared disgusted with me and usually rolled their eyes and acted like they could not believe I had the nerve to challenge them.

68.   I simply proceeded to demolish their case and win every hearing until two days before the jury trial that they said I had no shot of winning they finally settled at the demand I had not come down off the past six months.  I won and according to the other side there attorney fees were over $19,000.00 half-way through the case, when they were trying to bully me into settling advising me I would owe their attorney fees if they won.

69.  My response was "shove it" "I don't lose" and "you've run up against the best there is and I'll win so I don't care about your attorney fees"  It's just my style, I back it up and it's protected by the first amendment.

70.  In addition in 2010 I was wrongly accused of a felony in Faulkner County.  When my attorney refused to be aggressive enough I fired him on the spot and in court and demanded to represent myself.

71.  A thirty minute Feretta hearing was held and I was warned and cautioned repeatedly by Judge Clawson to not represent myself and I was making a huge mistake.

72.  I respectfully asserted my right to represent myself, briefed the court and then was allowed to represent myself. I filed twenty-six pre-trial motions my attorney would not file and won some of them forcing the dismissal of the felony charge which I was not guilty of.  I then took responsibility for the minor misd charge I was fully guilty of and paid a fine and the record has since been expunged.

73.  I ask the Court if these are actions of a person that disrespects the Courts.  I admit my style is in your face aggressive but that's just the way I am.

74.  My <u>personal opinion</u> is that the Defendant's motion is a pathetic cheap shot and low blow in trying to get a well pleaded lawsuit dismissed because their feelings are hurt and they are personally offended.

75.  My non-attorney and personal feeling is "how dare you ask this Honorable Court to dismiss this

Exhibit 4-Page 7

action when you admit to violating the FDCPA.  I want my day in court for this case to be judged on it's merits and not me judged personally.

76.  Courtrooms are for deciding the law and who is wrong and right legally.  Not who's feelings are hurt or offended.   If they want to have me judged morally or by their high ethical standards take me to church.

77.  My <u>personal opinion</u> is they know they can't win this case if they have to argue the facts and the merits so they are making a desperate hail mary (this is a football reference where the losing side throws a pass as high and far as they can and just prays they will get lucky, beat the odds, and fluke into a victory).

78.  They are mad an amateur filed such a rock solid legally dead on complaint which they have no defense.   So instead they have decided to attack the victim and try to drag me through the mud to deflect the attention away from their client's violations of federal and state laws.  It's a disgusting cheap shot.

79.  Paragraph twenty-six of Defendant's motion correctly states FRCP 16(f).

80.  Paragraph twenty-seven of Defendant's motion asks this Honorable Court to violate my First Amendment rights and force me to make my speech conform to an oath I don't want to take.

81.  Paragraph twenty-nine of Defendant's motion is asking this Honorable Court to trample the rights of a law abiding, tax paying, United States citizen, who is not a member of the bar, that has a slam dunk lawsuit for admitted violations of the FDCPA.  I oppose and am offended by every word of paragraph twenty-nine.

82.  How can an attorney-at-law ask a court to violate a citizen like this.   If it was not their free speech right to ask this Court, I'd sue them for harassing me by trying to violate my rights.  They are simply mad because they are beat by an amateur that they played for a fool.   They have bet all their chips into the pot and now they see they have the losing hand and want their money back and to be able to fold their hand.

83.  The Defendant has successfully allowed an amateur to dupe them and bait them into a battle over the personality and opinions of the Plaintiff and lose the focus of this lawsuit and the fact they are defending against admitted FDCPA violations.   This is turning into a circus because the Defendant is letting the Plaintiff get under their skin and they are not professional enough to keep their focus.

84.  Surly Mr. Mixon is able to keep his focus and defend against a simple FDCPA suit while the Defendant posts immature comments online.

85.  I find it incredibly hard to believe Mr. Mixon and/or Ms. Worsham really need a civility order to keep their concentration and provide for an adequate defense of their client.  If so, that does not make them very good lawyers in my book.  I'm focused and I could care less what they write about me online. At the end of the day my actions in court will speak louder than any statements on the internet.

86.  The Defense motion is as silly as a center fielder suing a couple of drunk college kid hecklers because he keeps missing the fly balls because the hecklers are bothering him.   I say to the Defense, get a tougher skin and stop letting an amateur run over you.

Exhibit 4-Page 8

87. In the Defendant's brief to the court they again spend a lot of time telling the court what I'm sure the court already knows and the Plaintiff could care less about because he is not an attorney and has no plans to ever be an attorney.

88. In the Defendant's brief under three "A" Plaintiff's conduct, the Defendant correctly explains the CIC website and how it operates.

89. The Defendant's brief, again, states I refer to myself as the Robin Hood of debtors. I have already addressed this true statement in this affidavit, embrace what I said and 100% consider myself the Robin Hood of debtors.

90. Defendant's brief states I consider myself well versed in the law and there is no better pro se debtor litigant in the Whole United States of America.

91. I am well versed in the law and there is no better pro se debtor litigant in the United States.

92. Defendant's brief has one of my posts attached where I say I love a strict liability statute and that there is nothing they can do to me and I can be as arrogant as I want.

93. I do love a strict liability statute, especially when the party I'm suing admits to violating the strict liability statute and tries to blame the victim for not being as dumb as they played the victim for.

94  Also, I can be as arrogant as I want and they can't do anything about it. Obviously I'm talking outside of court.

95. Again, as stated in the brief I do encourage others to act with arrogance as long as they can back it up and cash the checks their mouth writes.

96. I can back it up and cash those checks. The court only needs to look at my pro se complaint and ask the Defense if they can find one hole in it or one argument they can use that is not a losing argument.

97. If they could beat me on the merits of the case they would not have filed this ridiculous motion to censor a private citizen that has broken no laws and might have violated an oath that he did not take and is not bound by.

98. The Defendant's brief goes on to say how I'm a hero on the board. I am a hero on the board.

99. The Defendant's brief states there were failed attempts to schedule the deposition. That is because the other side would not call us back for months, so they failed themselves.

100. The Defendant's brief then quotes me about why the deposition was on a Saturday.

101. I lied on the board and used pufferey and played to the audience. Ms. Leigh's schedule was packed and I agreed with her we were making no special arrangements during the week for them because we had tried for three months to schedule the deposition with no return calls and now they were wanting to depose me after the discovery cutoff date.

Exhibit 4-Page 9

102. Her schedule was busy during the week and she asked me if I would agree to a Saturday deposition.   I simply said any time any place.  Ms. Leigh even told me she would fight the deposition since they waited so long and I said NO, let them depose me, Robin hood is going to take up for his unsophisticated counterparts.

103. It simply sounds "so much cooler on-line" that I forced them into a Saturday deposition   Defense counsel really needs to understand you can't just go and believe everything you read on the internet.  You don't have to post on the internet under the penalty of perjury.

104. Defendant's brief then states I used the law to harass them.  I used the law to beat them and if that is harassing them that's their own problem.  Learn to be better lawyers if you don't like losing.  Winning usually shuts up the other side.

105, Defendant's brief then states I planned to demean the deposition   No, I showed up in a suit and tie on a Saturday morning, answered every question and my lawyer did not object to anything.   I had already told her not to object because I was going to answer anything and everything they asked.

106. Also, even though I posted I was going to, I did not wear an adult diaper, bring plenty of water, or talk into the night.  Again, that sounds "a whole lot cooler on-line" is puffery and playing to the audience.   I'm sorry if the Defendant was fooled and believed everything they read on the internet.

107. Defendant's brief then states my goal was to say some one liners and turn the deposition into a train wreck.  Again, I did plan First Amendment right one-liners and I did hope for a legal train wreck.  I did want something that could go viral because that would defiantly be a deterrent in my opinion and I'm disappointed I was not able to deliver.

108. Defendant's brief then goes on to show what I posted right before the deposition took place.

109. Again, this is puffery and playing to the audience and being a "character"  "other person" "transforming into a role" "spicing it up and playing to the audience" or "acting"

110.. I also posted in that same thread they reference in their brief that; I was riding my thoroughbred mule to the deposition, but first stopping by Waffle House to tailgate, and then when I arrived on my mule at the deposition I would enter the deposition in my Ric Flair wrestling robe with a band behind me playing Hail to the Chief and was going to double park my thoroughbred mule outside.

111. None of that happened of course, and for the record, I don't even own a mule.

112. The Defendant's brief then states I had anxiety attacks due to the Defendant's conduct.  I did, almost a year earlier, when my rights were violated.   The deposition was almost a year later, again thanks to Defendant's unprofessional conduct.

113. And even if the jury were to find no actual damages, I don't have to have actual damages to trigger liability and statutory damages under the FDCPA.  The Defendant should know that.  Also, different people handle stress in their own ways.   Some people choose to lose themselves in somewhat of another person or character to keep the stress and pain away.  A jury should decide if I have damages, not Mr. Mixon.

114. The Defendant's brief then states I want an unreasonable amount to settle.  How dare they

Exhibit 4-Page 10

determine what is unreasonable, and for the record we were at $7500.00 and they were at $5000.00 prior to the deposition, and prior to them filing this motion they were at $5000.00 and we were at $6000.00. In other words one-thousand dollars apart.  They have themselves to blame for not being done with this lawsuit for $2,000.00.  Let a jury decide what is reasonable or unreasonable.

115.  Defendant's brief then talks about me posting how Ms. Washburn asked me the same question ten different ways and how I just gave the same answer no matter how she asked the same question ten different ways.

116.  Ms. Washburn did ask me the same question ten different ways and I did give Ms. Washburn the same answer no matter how she asked the same question.  I knew she was trying to get me to contradict myself and that's why I told the truth and never changed my answer.

117.  Defendant's brief attaches my post on the internet where I posted that, "I implied and did everything but call them stupid at the deposition."

118.  That is because I implied and did everything but call them stupid, which I think they are.

119.  Defendant's brief then states I posted on the internet, "I wanted her (meaning Ms. Washburn) to be real clear the deposition might have been for intimidation, but that plan failed miserably just two minutes in and the next three hours were going to be a nightmare (as in legal nightmare)."

120.  I did want Ms. Washburn to know their intimidation had failed miserably just two minutes in and I did want Ms. Washburn to know or feel like the next three hours were going to be a nightmare (as in legal nightmare).  I meant every word I said and do not distance myself from that statement whats-so-ever.

121.  Defendant's brief then states I am not using the law for legitimate purposes.  If the Defendant would stop making this about me personally and try the case on the merits as pleaded in my complaint, they will see just how legitimate my use of the court is when they write me a check after a Plaintiff's verdict.  My case is rock solid and I want my day in court to teach the Defendant's client a lesson.

122.  I'm using the law and procedures to my advantage and don't apologize for that at all.  Again, learn to be better lawyers if it upsets you and beat me at trial.  Coach Bear Bryant said, "First there are the winners and they know they are the winners, then there are the losers and they know they are losers, I ain't nothing but a winner"  I feel the same way, I ain't nothing but a winner and if you don't like it, don't break the FDCPA.

123.  The brief then talks about how I want them to make a horrible business decision and take this to trial.   I do want them to make a horrible business decision and I do want them to take this to trial.  I want there to be a public record of this so anybody that ever looks can see the legal beat down me and my attorney put on them at trial.  I want to be a deterrent for illegal FDCPA behavior and there is no better way to do that than a trial that will have an official transcript forever.   I made the statement and I mean it.

124.  The brief then talks about vulgar posts I made.  The posts were far from vulgar, but for the sake of argument assuming they were vulgar, it's protected speech and it's the way I talk on the board.  I play to the audience just like a professional wrestler does.

Exhibit 4-Page 11

125. Also, on the board we have a running joke that after somebody posts something long, detailed and serious, if there is a woman involved, we ignore everything in the post and say, "let's talk about what's important, was she hot" That is what happened here and I gave the board the answer they wanted.

126. The brief then states I should be held to higher ethical standards. Why, because the Defendant is offended? I don't want to be held to higher standards. I want to drag the other side down to my level where I can beat them every time with experience. I don't want to come up to their level where they might have the upper hand. I am doing just fine at the level/standard I am at.

127. The brief then talks about the courts authority over lawyers. I did not read the cited cases but I'm sure they say what the Defendant put in the brief.

128. I, Brandon Scroggin, have had my rights violated and I have filed a lawsuit that has merit and is legally sound. I have a certain style to try to get into the other sides head so they will not concentrate on the facts. It's what I do and I do it well. I don't apologize for anything I did or said.

129. I posted on the website "it's my style" because it's my style and I posted "I'm not changing my style" because I'm not changing my style. However, I do want to be crystal clear that any order or ruling from the Court will be immediately followed and 100% complied with. If I feel an error has been made, I will comply with any Court order and then use the courts procedures to address any error I feel has been made.

130. I have deep respect for the Court and I simply have an aggressive style, which I feel has crossed no lines and is protected speech and expression. I have a legitimate cause of action which I simply want my day in court for and to be judged by a jury of my peers on the merits of my allegations.

Under penalty of perjury I sign this affidavit as true and correct and will be in court for the motion to dismiss hearing and available for questioning.


Respectfully Submitted,



Brandon Scroggin A.K.A. Coltfan 1972

Exhibit 4-Page 12