IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BRANDON SCROGGIN                                                    PLAINTIFF

CASE NO. 3:12-CV-00128-SWW

CREDIT BUREAU OF JONESBORO, INC.                                   DEFENDANT

## DEFENDANT'S MOTION FOR ATTORNEY'S FEES AND COSTS

Comes Defendant Credit Bureau of Jonesboro, Inc. ("CBJ"), in accordance with Fed. R. Civ. P. 54(d), hereby moves for an award of attorney's fees in the amount of $37,830.00 and costs in the amount of $890.32 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3) ("FDCPA") and the Arkansas Fair Debt Collection Practices Act, Ark. Code Ann. §17-24-512(a)(3)(B) ("AFDCPA") or, alternatively, pursuant to this Court's inherent authority. CBJ respectfully moves this Honorable Court to award its attorney's fees and costs incurred in defending this action based upon the following:

1.      Plaintiff filed a civil action alleging that CBJ violated the FDCPA, the AFDCPA, the Arkansas Collection Agency Act ("ACAA"), and the Arkansas Deceptive Trade Practices Act ("ADTPA"). Plaintiff's actions under the ACAA and the ADTPA were dismissed by the Court prior to trial.

2.      Both the FDCPA and AFDCPA, as well as this Court's inherent authority, provide for an award of attorney fees to a defendant when the action has been brought in bad faith or for the purpose of harassment.

3.      Specifically, the FDCPA, 15 U.S.C. §1692k(3)(a) provides: "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of

1

harassment, the court may award to the defendant attorney's fees reasonable in relationship to the work expended and costs."

4.      Likewise, the AFDCPA, Ark. Code Ann. §17-24-512(a)(3)(B) provides: "[i]f the court finds that an action under this section was brought in bad faith **OR** for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." (emphasis added).

5.      Additionally, this Court has inherent authority to sanction a party for bad faith conduct upon a finding that plaintiff acted in bad faith, vexatiously, wantonly, or for oppressive reasons. Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).

## District Court Findings

6.      The jury reached its verdict in this matter on July 16, 2013. The jury found that CBJ failed to comply with the FDCPA and AFDCPA when CBJ attempted to contact Plaintiff after it had received Plaintiff's "refusal to pay" letter. The jury awarded Plaintiff no statutory or actual damages and found that Plaintiff brought this action in bad faith, but not for the purpose of harassment. (Doc. 52).

7.      The FDCPA provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; and

        . . .

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

15 U.S.C.§1692k (emphasis added).

8.    The AFDCPA provides:

Except as otherwise provided by this section, a debt collector who fails to comply with this subchapter with respect to a person is liable to the person in an amount equal to the sum of:

(1) An actual damage sustained by the person as a result of the failure;

(2) (A) In the case of an action by an individual, the additional damages as the court may allow not exceeding one thousand dollars ($1,000); and
…

(3) (A) In the case of a successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

Ark. Code Ann. §17-24-512 (emphasis added).

9.    Plaintiff's success in this action was technical and de minimis. Plaintiff's success was limited to the jury's determination that CBJ had failed to comply with the FDCPA and AFDPCA and made two violations.

10.    The jury further determined that CBJ was not liable to Plaintiff for any damages and awarded zero. By not being awarded any damages, Plaintiff was not successful in "enforcing the foregoing liability" within the meaning of the statutes, and therefore, he is not the prevailing party of this action.

11.    CBJ is the prevailing party in this matter because it was not found liable to Plaintiff and additionally, the jury found that Plaintiff brought this action in bad faith.

### CBJ is Entitled to Be Awarded Reasonable Attorney's Fees and Costs

12.    Both the FDCPA and AFDCPA allow the Court to award a defendant reasonable attorney's fees and costs if the matter was brought in bad faith and/or for purposes of harassment.

13.    As stated previously, in order to obtain an award of attorney fees and costs under the FDCPA, CBJ must set forth sufficient evidence to demonstrate that Plaintiff brought this matter in bad faith **AND** for the purpose of harassment. 15 U.S.C §1692k(a)(3).

14.    However, in order to obtain an award of attorney fees and costs under the AFDCPA, CBJ must set forth sufficient evidence to demonstrate that Plaintiff brought this matter in bad faith **OR** for the purpose of harassment. Ark. Code Ann. §17-24-512(a)(3)(B).

15.    The jury found that there was sufficient evidence to find that Plaintiff brought this action in bad faith. The jury believed that Plaintiff's dishonest conduct showed that he brought this action in bad faith and with a state of mind characterized by hatred, ill will, or a spirit of revenge. (Doc. 52).

16.    According to the provisions of the AFDCPA, CBJ is entitled to be awarded its attorney fees and costs due to this bad faith finding. See Ark. Code Ann. §17-24-512(a)(3)(B).

17.    In the instant matter, Plaintiff's bad faith and improper motive in bringing this claim are shown by his conduct prior to and throughout this lawsuit, Plaintiff's litigious nature, Plaintiff's online persona and postings, Plaintiff's desire to run up CBJ's legal fees and additionally, run up his own attorney's fees due to the FDCPA and AFDCPA "fee-shifting" provisions.

## Plaintiff's Bad Faith Conduct Prior to Lawsuit

18.     On or about October 4, 2011, Plaintiff received medical services from St. Bernard's hospital in Jonesboro, Arkansas. Plaintiff did not pay for the medical services and his account was assigned to CBJ to collect.

19.      On or about February 27, 2012, CBJ sent a letter to Plaintiff requesting that he pay his account. In response, Plaintiff wrote a letter back to CBJ stating: "I refuse to pay this debt because I don't think I owe that because I was only there an hour and then left after I started feeling better." Pl. Trial Ex. #2.

20.     CBJ's vice president, Diann Jenkins, testified at trial that she verified with St. Bernard's that Plaintiff owed this debt and that a debt verification was sent to Plaintiff. Plaintiff admitted to receiving the debt verification and did not dispute validity of the underlying debt.

21.     Plaintiff intentionally made his refusal letter ambiguous in effort to solicit a FDCPA violation from CBJ. He wrote this letter to CBJ in bad faith because he knew that underlying debt to St. Bernard's was valid.

22.     Furthermore, Plaintiff also knew that many debt collectors are unaware that a "refusal to pay" is the same thing as a "cease and desist" under the FDCPA and AFDCPA.[1] If Plaintiff wanted to ensure that he would not be contacted again by CBJ, he would have stated this intention more clearly. However, Plaintiff purposely made his letter ambiguous to set up CBJ to violate the law.

---

[1] See Def. Ex. 5, page 4, post #160; page 6, post #97; pages 7-8, post #78; page 12, post #364; page 15, post #457; and Doc. 18-5, page 16, post #52. Note—Exhibit 5 is a compilation of some of the posts that were presented at trial.

23.     Due to Plaintiff's extraordinary knowledge of the FDCPA, he knew that in order to increase his damages for a potential lawsuit, he needed to have another FDCPA violation. Therefore, Plaintiff directed his friend, Kirby Wilson, to listen to the voicemail that CBJ left for Plaintiff. Plaintiff's intent in doing this can be show by his various online postings, which are more further discussed in the brief accompanying this motion.

24.     Plaintiff later sent a second letter to CBJ stating that CBJ contacted him in violation of the law, and that if CBJ did not pay him $2,500.00 within 30 days, then he would file a federal court lawsuit. Plaintiff included an unfiled copy of the complaint and a copy of a previous lawsuit that he filed against another debt collector that was dismissed because Plaintiff received a settlement.[2]

25.     CBJ did not pay Plaintiff's demand and this lawsuit was filed after the expiration of the 30 day time period set by Plaintiff.

### Plaintiff's Conduct During Litigation

26.     After Plaintiff filed suit, the parties engaged in discovery and CBJ's counsel requested to take Plaintiff's deposition. The deposition took place on March 2, 2013.

27.     Prior to the deposition, CBJ made the business decision of offering a settlement of $5,000.00 to Plaintiff. See Doc. 26-5, page 1. At this point in time, Plaintiff was fully aware that he could not receive more than $2,000.00 in statutory damages under the FDCPA and AFDCPA. In addition, $500.00 would have fully compensated Plaintiff for his costs in bringing this lawsuit. Furthermore, Plaintiff's counsel could not have had incurred much more than $2,500.00 in fees.

---

[2] Plaintiff sued another debt collector in case number *Scroggin v. Synerprise Consulting Inc.*, 3:12-CV-00088-BRW (E.D. Ark. 2012). The debt involved in this lawsuit also arose from Plaintiff receiving medical services from St. Bernard's hospital. According to Plaintiff, this case was dismissed pursuant to a settlement.

28.    In response to this settlement offer, on February 25, 2013, Plaintiff's counsel sent CBJ's counsel an excerpt of an email authored by Plaintiff that stated the following:

> Listen here, you tell that **little witch** that we will take 6500.00 and that expires at 5:00 PM today. I was a claims adjuster for 12 years and the second this reaches 10K and ins takes over the insurance company will immediately settle. On top of that I want a depo, I've already got people lined up to pay for the video and I'd crawl through 40 feet of snow to make it I have to. I'm not scared of a depo and surly not of a trial. I know the law, I know I'm right, I know what to say and not to say and if she thinks for one second she stands a chance going against me she has another thing coming. We will freaking steam roll them at trial. I got judge Moody to overrule himself on his own motion to reconsider because I was so confident when I was arguing the law to him. We will mop the floor with them. The Supreme Court of the US is on my side**, the fee shifting means I win no matter what, and I'm not afraid of a freaking thing.** In fact I'll tell her it's not if we win but just how much. **And I'll get this over her client's deducible and I don't care if I get 1K at trial and you 80K in legal fees,** we are not settling for anything less than 6500.00 and she can shove her threats up her ass and she better get ready. I beat national loan recoveries at trial and I stipulated I owed every dime they were asking for at the beginning of the trial. The other sides jaw dropped when I said not to them and then challenged their standing. **I know what I'm doing and I'm going to kick their ass all over the courtroom. I don't care if you forward this message to her, I really don't.** It's 6500.00 by 5:00 or shove it up her ass and get ready for the depo and trial. **I know what the hell I'm doing and I'm going to win and I'm going to win by a landslide.**

See Doc. 26-5, page 1 (emphasis added).

29.    CBJ's counsel deposed Plaintiff on March 2, 2013. During the deposition, Plaintiff stated that he would be stupid to settle for $5,000.00 because he had to hire an attorney. He even admitted the reason that he later hired Ms. Leigh was because he was tired of "debt collectors getting' off easy" since he could not find a way to get attorney fees for himself. Exhibit 4, Page 4, Lines 11-18.

30.   As noted at trial, Plaintiff also used the deposition as an opportunity to make "first amendment" sexual one-liners in response to opposing counsel's questions.   Plaintiff also disclosed that he is "Coltfan1972" online and the extent of his profile.

31.   After the deposition, CBJ's counsel began to review Plaintiff's online postings. It became crystal clear that Plaintiff had no claim for actual damages, as he referred to the voicemail by CBJ's employee as a "Christmas present."[3] Additionally, Plaintiff offered no recent medical records nor sought medical attention after the self-diagnosed anxiety attacks he allegedly suffered due to CBJ's phone call and letter. However, Plaintiff never dismissed his claim for emotional damages.

32.   Plaintiff essentially rejected a "nice chunk of change"[4] so that he could run up, not only CBJ's fees, but also his own attorney's fees, and entertain his online friends.

33.   As shown at trial, Plaintiff continued to post online and even made sexual comments about opposing counsel,[5] which led opposing counsel to file for an order of civility. After such filing, Plaintiff continued to taunt and harass CBJ's counsel directly by sending them unprofessional emails. Doc. 26-3.

34.   Plaintiff simply continued this case so that he could get a big pay day. As he posted, he thought that all he needed was to be awarded $1.00 and that would trigger the fee-shifting provision of the FDCPA.[6]

---

[3] Def. Ex. #5, page 1, post #1.
[4] See Doc. 18-5, page 70, post #213.
[5] See Doc. 18-5, page 59, post #168.
[6] See Def. Ex. 2, page102, post #164.

35.     CBJ does not have knowledge of the agreement between Plaintiff and his counsel. However, CBJ assumes that Plaintiff's counsel took this matter on a contingency basis due to Plaintiff's behavior and the content of his postings.

36.     The day of trial, Plaintiff posted that he had a "vested interest" in the amount of attorney's fees being awarded.[7] After the jury reached its verdict, Plaintiff admitted that he was "banking on attorney's fees."[8]

37.     On July 17, 2013, Plaintiff posted on the InsideArms.com site under the username "Todd Bean" in reference to this case: "[t]hey are collecting nothing from me, probably won't get anything even awarded but I won't pay it even if it's awarded and will fight them to the ends of the earth and cause them thousands trying to collect and they know it so I doubt they even try."  Defendant's Exhibit 3, page 135, post #227.

38.     Plaintiff's litigation tactics have made clear that he designed this lawsuit to punish CBJ's employees for doing their job. He has a "pure hate"[9] for the collection industry and desires "to be a thorn and make them bleed."[10]

39.     Plaintiff was not the victim of abusive debt collection practices. He manipulated the law and set up an honest collection agency into making violation. Plaintiff filed this case a means of generating income rather than vindication of a legal right.

40.     Plaintiff is not going to stop this conduct unless this Court sends him a strong message. He has posted that this will not be his last time in federal court and that he will

---

[7] See Def. Ex. 2 page 5, post #12.
[8] Def. Ex. 3, page 123, post #206.
[9] Def. Ex. 3, page 35, post #59.
[10] Def. Ex. 3, page 41, post #71.

"continue to get behind on bills" so that he can sue the next agency. See Def. Ex. 3, page 102, post #169.

41.     Plaintiff conduct prior to and throughout this lawsuit supports a finding that this filing was brought in bad faith and for the purposes of harassment.

42.     CBJ's counsel has incurred $37,830.00 in attorney's fees and $890.32 in costs in defending this matter. CBJ's fees should be awarded pursuant to the "lodestar method" and/or the Arkansas "Chrisco factors." See Def. Ex. #1, Affidavit of Rebecca Worsham.

**Alternately, Costs should be awarded under Fed. R. Civ. P. 68.**

43.     Under Fed. R. Civ .P. 68, "if the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. P. 68. Here, CBJ offered to pay Plaintiff $ 2,500.00 in its Rule 68 Offer of Judgment. See Exhibit 6. Plaintiff did not accept the offer. Subsequently, the final judgment obtained by Plaintiff was not more favorable than the offer. (Doc. 52). As such, CBJ, at the very least, is entitled to its costs incurred from the date the offer was made.

WHEREFORE, Defendant Credit Bureau of Jonesboro, Inc. prays that this Honorable Court will grant this motion for attorney's fees and costs, and award CBJ $38,720.32 in attorney's fees and costs.

Respectfully Submitted,

MIXON LAW FIRM
Attorneys for Defendant
P.O. Box 1442
Jonesboro, Arkansas 72403
870.935.8600, 870.935.8266(f)
rworsham@mixonlawfirm.com

By: /s/ Rebecca Worsham
     Rebecca Worsham 2009260


CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of Court on August 1, 2013, using CM/ECF system, which shall send notification of the filing to the following:

     Victoria Leigh
     Leigh Law LLC
     P.O. Box 21514
     Little Rock, Arkansas 72221
     501-658-3108
     v@leigh-law.com

                     /s/ Rebecca Worsham
                    Rebecca Worsham