IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BRANDON SCROGGIN                                                    PLAINTIFF

CASE NO. 3:12-CV-00128-SWW

CREDIT BUREAU OF JONESBORO, INC.                          DEFENDANT

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR ATTORNEY'S FEES AND COSTS

Defendant Credit Bureau of Jonesboro, Inc. ("CBJ") seeks attorney's fees and costs pursuant to 15 U.S.C. § 1692(a)(3) and Ark. Code Ann. 17-24-512(a)(3)(B) or, alternatively, pursuant to this Court's inherent authority. This motion is timely pursuant to Federal Rules of Civil Procedure Rule 54(d), as it is filed within fourteen days after judgment was entered. This Honorable Court entered judgment in this matter on July 18, 2013. (Doc. 57).

CBJ contends that Plaintiff brought his lawsuit for improper purposes and not to remedy any abusive debt collection practices. The jury felt the same way and found that Plaintiff brought this suit in bad faith. (Doc. 52). Plaintiff's conduct and the contents of his online postings show that he manipulated the law by intentionally writing a refusal letter in bad faith to set up CBJ into violating the FDCPA.

The FDCPA has generated a "cottage industry" for sophisticated consumers who pursue meaningless cases knowing it is cheaper for debt collectors to settle than to fight the case. In the current matter, CBJ stood up to this kind of blackmail, and now seeks attorney's fees and costs in the amount of $38,720.32 plus the fees and costs incurred to reply to the opposition to this Motion.

**A.    Plaintiff is not the Prevailing Party of this Matter.**

The jury found that CBJ failed to comply with the FDCPA and AFDCPA when CBJ attempted to contact Plaintiff after it had received Plaintiff's "refusal to pay" letter. The jury awarded Plaintiff no statutory or actual damages and found that Plaintiff brought this action in bad faith, but not for the purpose of harassment. (Doc. 52).

The FDCPA provides:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of —

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow,  but not exceeding $1,000; and
. . .
(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

15 U.S.C.§1692k (emphasis added).

The AFDCPA provides:

Except as otherwise provided by this section, a debt collector who fails to comply with this subchapter with respect to a person is liable to the person in an amount equal to the sum of:

(1) An actual damage sustained by the person as a result of the failure;

(2) (A) In the case of an action by an individual, the additional damages as the court may allow not exceeding one thousand dollars ($1,000); and
…
(3) (A) In the case of a successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

2

Ark. Code Ann. §17-24-512 (emphasis added).

Plaintiff's success in this action was only technical and de minimis and limited to the jury's determination that CBJ made two violations. The jury further determined that CBJ was not liable to Plaintiff for any damages and awarded zero. (Doc. 52).

"The [FDCPA] use of the term 'successful action' appears to be synonymous with the term 'prevailing party.'" See Crabill v. Trans Union, LLC., 259 F.3d. 662, 666 (7th Cir. 2001). In Dechert v. Cadle Co., the Seventh Circuit Court of Appeals explained:

> The general, indeed all but invariable, rule is that to be a prevailing party and therefore entitled to an award of fees and costs, you either must obtain a judgment that provides you with formal relief, such as damages, an injunction, or a declaration that you can use if necessary to obtain an injunction or damages later, or must obtain a settlement that gives you similar relief.

441 F.3d 474, 475 (7th Cir. 2006), citing Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); King v. Illinois State Board of Elections, 410 F.3d 404, 414 (7th Cir.2005); Palmetto Properties, Inc. v. County of DuPage, 375 F.3d 542, 547 (7th Cir.2004); Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666-67 (7th Cir.2001); Nagle v. Experian Information Solutions, Inc., 297 F.3d 1305 (11th Cir.2002).  By not being awarded any damages, Plaintiff was not successful in "enforcing the foregoing liability" within the meaning of the statutes, and therefore, he is not the prevailing party of this action. In fact, Plaintiff received absolutely no relief from this lawsuit. He failed to even secure a nominal recovery.

On the other hand, CBJ secured a jury verdict which found that it was not liable to Plaintiff and that Plaintiff brought this action in bad faith. Thus, CBJ did obtain a verdict that allows it to pursue attorney's fees and costs as determined by this Court. As such, CBJ is

the prevailing party of this action and entitled to its attorney's fees and costs pursuant to the AFDCPA, or alternatively pursuant to this Court's inherent authority.

**B.     CBJ is entitled to attorney's fees and costs pursuant to Ark. Code Ann. § 17-24-512 (a)(3)(B).**

In order to receive an award of attorney's fees under the AFDCPA, a defendant must show that the plaintiff brought the claim in bad faith **OR** for the purpose of harassment. Ark. Code Ann. §17-24-512(a)(3)(B). CBJ is unaware of any Arkansas case that has interpreted the meaning of "bad faith" under the AFDCPA. Therefore, it is proper for this Court to look at other situations in which Arkansas state courts have defined "bad faith" conduct. In actions concerning insurance bad faith claims and intentional interference with contract expectancy claims, Arkansas courts have interpreted "bad faith" to mean conduct that is "dishonest, oppressive, or carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." See <u>Watkins v. S. Farm Bureau Cas. Ins. Co</u>., 2009 Ark. App. 693, 370 S.W.3d 848 (2009); <u>Stevenson v. Union Standard Ins. Co</u>., 294 Ark. 651, 746 S.W.2d 39 (1988).

Plaintiff did not bring this suit because he was a victim of abusive debt practices. He brought this suit in revenge and attempted to get out of paying a legitimate debt by intentionally "soliciting" a FDCPA violation from CBJ. Plaintiff was in bad faith when he wrote the letter to CBJ which stated: "I refuse to pay this debt because I don't think I owe that because I was only there an hour and then left after I started feeling better." Pl. Trial Ex. #2. CBJ's vice president, Diann Jenkins, testified at trial that she verified with St. Bernard's that Plaintiff owed this debt and that a debt verification was sent to Plaintiff. Plaintiff admitted to receiving the debt verification and did not dispute validity of the underlying

4

debt. Thus, Plaintiff was in bad faith when he wrote the letter because he knew he owed the debt.

Plaintiff shamelessly used the FDCPA, designed as a shield to protect abusive debt collection practices, as a sword of intimidation.  He knew that many debt collectors were unaware of the "refusal to pay" provision.[1] Plaintiff even posted online that CBJ did not realize that it had committed a violation when they further contacted him about the debt.[2] As he explained to another consumer online:

> I mean I'm in federal right now because "I refused to pay" when I wanted to C&D. It's pretty obvious that 99.9% are going to write a long drawn out letter for a C&D instead of I refuse to pay. Too bad for them I'm that .001% and they know they were set up and are screaming and hollering unclean hands.[3]

As Plaintiff indicated in his post, if he wanted to ensure that CBJ did not contact him further, he would have wrote in his letter for CBJ to "cease and desist" all contact with him. Plaintiff's trickery in manipulating the law led CBJ to commit a violation of the act.

Plaintiff knew from the beginning of this lawsuit that he suffered no actual damages in the form of emotional distress from CBJ's phone call and letter. Yet, due to his extraordinary knowledge of the FDCPA, he recognized that in order to increase his damages for a potential lawsuit, he needed to have another FDCPA violation. Therefore, in bad faith, Plaintiff directed his friend to listen to the voicemail left by CBJ. Plaintiff then claimed to be embarrassed because his friend knew that he did not pay a debt, which caused him to have anxiety attacks. However, as Plaintiff's online postings reveal, he saw the voicemail as a

---

[1] Def. Ex. 5, page 4, post #160; page 6, post #97; pages 7-8, post #78; page 12, post #364; page 15, post #457; and Doc. 18-5, page 16, post #52.—Note Exhibit 5 is a compilation of some of the posts that were shown at trial in this matter. The posts numbers are the same numbers as they were at trial.

[2] Def. Ex. 5, page 6, post #97.

[3] Def. Ex. 5, page 11, post #161.

"Christmas present"[4] and the "third party disclosure" was only further part of his set up. For example, on April 29, 2012, two days after he received the phone call, Plaintiff posted:

> However, since the last agency just folded, bent over and grabbed their ankles and said do with us as you please, I've decided to "step my game up" and let's try to send a little clearer message that these violations will not be tolerated. I mean how much dadgum emotional distress is a person supposed to endure.
>
> So, since I will obviously whip the dog out of them and defeat is not even a remote option (if you don't believe me just ask me), it's just a matter of how bad and for how much at this point. I want to maximize the retaliation, do some damage and hopefully goad and/or force them to an actual trial.[5]

Plaintiff saw this phone call as a Christmas present because he knew that he could use it as leverage to generate cash for himself. As he explained on the InsideArms.com website, which is a collection industry focused website, "your client [meaning debt collectors] has two choices, pay me off or spend the next two years in federal court fighting a pro se litigant that is hell bent on making the experience an expensive nightmare, and who will probably win as least on some of the claims."[6] In this instance, the debtor himself is the source of the abuse and CBJ is the victim, which is why the jury correctly found that Plaintiff brought his complaint in bad faith and awarded him zero damages.

---

[4] Def. Ex. #5, page 1, post #1.

[5] Def. Ex. #5, page 2, post #1.

[6] Def. Ex. #3, Page 15, post #21. CBJ's counsel was notified after trial that Plaintiff had been posting on the website InsideArms.com under the username "Todd Bean." CBJ's counsel accessed the website by typing http://www.insidearm.com/forum/topic/how-much-do-you-pay-your-collection-attorney into my internet browser. I captured screenshots of relevant materials by using the Google Chrome internet browser, typing "Ctrl P" on the keyboard, and then selecting to save the screenshot as a PDF file on my computer. Each screenshot contains the following similar characteristics:

a.   The date that the screenshot was captured is displayed in the top left corner;

b.   The language contained in the center of each screenshot states the subject of the contents below;

c.   The website address that is contained in the screenshot is displayed on the bottom left side; and

d.   If the screenshot is more than one page when printed out, the page number and total number of pages of the screenshot are displayed in the bottom right side corner of the screenshot.

However, even if this Court makes a finding that Plaintiff is somehow the prevailing party in this matter, it still has the authority to award CBJ its fees and costs pursuant to its inherent authority.

### C.   Alternatively, CBJ is entitled to attorney's fees and costs pursuant to this Court's Inherent Authority.

The United States Supreme Court has held that "if in the informed discretion of the court" there is "bad-faith conduct" and neither statute "nor the [r]ules are up to the task, the court may safely rely on its inherent power" to sanction such conduct. <u>Chambers v. Nasco, Inc.</u>, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). "By its nature as a court of justice, the district court possesses inherent powers 'to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases.'" <u>Wescott Agri-Products v. Sterling State Bank</u>, 682 F. 3d 1091, 1095 (8th Cir.2012), (quoting <u>Chambers</u>, 501 U.S. 32, 43-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quoting <u>Link v. Wabash R.R.</u>, 370 U.S. 626, 630-31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

Plaintiff is proud and experienced FDCPA litigator and proud of all of his court experience. From the outset, Plaintiff had an evil intent to go after any debt collector. He explained in his online postings: "I honestly want to be a thorn and make them [debt collectors] bleed when they finally run into somebody that will fight back."[7] He just has a "pure hate"[8] for the collection industry. On July 8, 2013, Plaintiff posted the following on the InsideArms.com website about his intentions in taking down the debt collection industry and CBJ:

---

[7] Def. Ex.#3, page 41 , post #71.
[8] Def. Ex. #3, page 35, post #59.

I'm not going to take down this industry no more than suing the tabocco industry. What I am going to do and have been doing is put a deep dent in the pocket book of this agency.

I'm driving a mack truck into this one agency checkbook, insurance premiums, lost revenue from time dedicated to this suit, making it a pubic record in a relatively small town where any other attorney in the country that goes to Pacer can see this agency has lost (which they will lose)

I'm now working for a law firm and we are going through this agency court records and we plan on suing them over and over and over and over again and aggressively going looking for clients. We will use this case as a selling point and hope there is the blood in the water and sharks start to circle.[9]

Although Plaintiff knew that CBJ's conduct caused him no emotional distress, he continued to pursue his claim for actual damages. Plaintiff even rejected CBJ's offer to settle the case for $5,000.00. After the trial, he explained why he rejected the settlement and posted:

You want the truth, I'm bored with always settling and always winning with little effort. It's old news, it is no challenge beating somebody like Clydesmom on a regular basis, yes being on Webrecon does not help at all. I did this also for pure excitement, to learn, the experience, be able to share, and to see if I could pull it off, and I came pretty dang close to it.[10]

Since Plaintiff rejected a $5,000.00 settlement and he had no legitimate claim for actual damages, his intention in continuing this case was clearly driven by attorney's fees. He even admitted the reason that he later hired Ms. Leigh was because he was tired of "debt collectors getting' off easy" since he could not find a way to get attorney fees for himself. Exhibit 4, Page 4, Lines 11-18. Plaintiff believed that so long as he was awarded at least $1.00 in statutory damages, then he would be awarded attorney's fees. After the trial he

---

[9] Def. Ex. #3, page 73, post #123
[10] Def. Ex. #2, Page 82-83, Post #136

explained, "[t]ens of thousands of dollars were literally decided by a buck."[11]   Unfortunately,

Plaintiff got too greedy and expected to earn a portion of those fees based upon his

presumed contingency agreement with his counsel.

On July 9, 2013, Plaintiff explained his strategy in this case to other debt collectors on

the InsideArms.com website and posted:

> I'm going to keep doing it over and over and over and over and over again. **Getting behind on bills does not give somebody a license to treat others like garbage**.
>
> And they screwed with the wrong person because I'm smart, I'm determined and you know  what you just said it yourself I can get under your skin. I know the buttons to push and I know when to back off and when to push hard.
>
> **But NO, flipped it on them and now I'm pulling the strings and I've got this thing turned into the biggest train wreck there is** and all you have to do is pull the case from Pacer to see I'm not lying.
>
> **I refuse to pay, you contact me for any other reason your sued, simple as that.**
>
> Then when I sue you and you know the stat max is 1K and you want to try to run me out of the game, get ready. That is when I'm going to make you bleed. Then you figure it out and offer me the stat max, I'm saying NO. You want to call me in for a depo, fine, I'm turning it into a circus, driving that thing right through the roof, flipping it on you, **getting an attorney of my own that gets the atty fees I can't get (at least awarded to me) and when we are said and done you are now stuck with already throwing a ton of money at this to try and still stay under your 10K deducible.**
>
> But no I now won't play and no I'm not settling for the 5K you offered (it's on the video their attorney even says you turned down 5k) and the other now offers I'm not disclosing.
>
> **You are now going to bleed**. I'm hitting you at your 10K ded, your ins will kick in, you will have a public record of this for any other consumer or consumer law firm to see, and when I win in court my judgement won't come with a non disclosure agreement.

---

[11] Def. Ex. #2, page 102, post #164. (emphasis added).

**10K is not chump change and then there are now atty fees on both sides. Plus there is the chance of a runaway jury verdict that could I fully admit get overturned but exceed the policy limits of 100K and now to get that overturned you're out a ton.**

If you even dream about violating my rights under the FDCPA the first thing you do is better apologize and pray I don't sue you for even dreaming about it. Deal with it. I'm going to win and it is going to cost a lot more than you guys are acting like nobody cares about.[12]

Plaintiff further clarified about his interest in his attorney getting awarded attorney's fees:

We're getting paid when we win or that collection agency will have a new owner. In fact, all they are doing right now is just driving my attorney's legal bills (which I now work for). **I have a vested interest in her being awarded attorney fees!!** That's all I'll say about that right now at this time.[13]

After the trial concluded he admitted:

**We were banking on the attorney fees. We knew no actual damages and figured a few hundred tops on Statutory but that would trigger the fee shifting.**[14]

The postings show that Plaintiff unreasonably and vexatiously multiplied the proceedings by transforming this lawsuit into entertainment for his online friends and wasting the Court's time. Fee shifting statutes were designed to enable private parties to retain the legal assistance necessary to vindicate legal rights, not to create windfall awards for attorneys or their clients. For these public policy reasons, CBJ would not be bullied into paying a settlement of more than what it offered. This Court should aid in sending a message that the judiciary will not stand for the filing of these lawsuits on a case with no damages to leverage a settlement at the cost of judicial resources, as well as defense costs.

[12] Def. Ex. #3, Page 90-91, Post # 150.
[13] Def. Ex. #2, Page 5, Post #12. (emphasis added).
[14] Def. Ex. #3, Page 123, Post #206. (emphasis added).

This Court should focus on sanctioning Plaintiff for his egregious conduct in this case. Sanctions are warranted to compensate CBJ for the attorney's fees and costs that have been incurred defending Plaintiff's meaningless lawsuit. Plaintiff continued this lawsuit for his own ego and to entertain his online friends. On the morning of trial, he even created a topic titled "[i]t's here 'showtime' live federal court jury trial update thread."[15] After the trial concluded, he posted:

> I can't say I would or would never do it the same again, but I don't have near the regrets that some of my opponents think I have or hope I have…. I rolled the dice. I took risks and decided I was taking all my online friends along for the ride and I was going to make a show of it and drive the other side crazy.[16]

Most importantly, sanctions are required to deter Plaintiff from continued vexatious behavior. Plaintiff has made clear that this will not be his last case in federal court. For example, on July 16-17, 2013, he made the following postings on the InsideArms.com site:

> I don't plan on that being my last FDCPA case by any stretch of the imagination, and I would roll out the red carpet and welcome this law firm as my opponent in any future cases.[17]
> …
> The next case (and we all know there will be) I'll be back with the case number. Don't even know who the Defendant will be or the facts and you already get 20-1 odds if you want to put your money where your mouth is and actually bet not only will I win but will win EVERY claim I make in the lawsuit.[18]
> …
> And no you've not seen the last of me and heaven help the next poor collector or agency. They are not going to know what hit them. **I'm getting ready to unload on them and use this case as motivation.** They are going to think they have run into the most crazed debtor with actual legal knowledge on the plant. **It's going to be after 9/11** when I was just walking around saying give us somebody to bomb off the face of the earth, anybody, I don't care who

---

[15] Def. Ex. #2, page 1, post #1. This exhibit was created by CBJ's counsel using the method described in footnote #6, except that this topic was contained at http://www.debtorboards.com.
[16] Def. Ex. #2, page 96, post #156.
[17] Def. Ex. #3, Page 124, Post #208.
[18] Def. Ex. #3, Page 136, Post #228

they are or what they did or did not do, just send some war planes over and level somebody. That's what we have hear. **I don't care if it's a threat to kill me left on my voice mail or they forget to cross one "I" or one "T" I'm unloading on them and they are going to pay me an insane amount of money or I'll force them right back into that federal courtroom and this time I won't have that attorney and I'll be running the show and you can bet your ass I won't lose and you can bet your ass it will be the most expensive case they have ever tried.**

**I don't care if I kill over dead right after the case is over, my mission will be complete**.

Somebody is getting ready to pay for this and call me anything you want but you know I can pull it off and you know I'll do every dang thing I just said I would. The letters are going out in the mail and the recorder is set up. **God help the next agency that calls or writes because it's just over**. [19]
…

It's all good though, just like this case you will get the next case number and rest assured I'll be more than making up for it. **Shoot losing this case will probably benefit me on the next one for just the sheer determination I'll have and the make them bleed approach I'll take**.[20]

As can be seen by Plaintiff's most recent postings, his abusive conduct is only going to continue. Plaintiff even posted that he will not honor Your Honor's judgment if she awards CBJ any sort of relief. On July 17, 2013, he wrote: "[t]hey are collecting nothing from me, probably won't get anything even awarded but I won't pay it even if it's awarded and will fight them to the ends of the earth and cause them thousands trying to collect and they know it so I doubt they even try."[21] This Court should not stand for such conduct and should send a message to Plaintiff by sanctioning him to pay CBJ's attorney's fees and costs incurred from the inception of this case through trial and post-trial motions.

---

[19] Def. Ex. #3, Page 129, Post #220. (emphasis added).
[20] Def. Ex. #3, Page 132, Post #225.(emphasis added).
[21] Def. Ex. #3, page 135, post #227.

**D.      Legal Standard to Determine Reasonableness of Attorney's Fees**

When determining reasonable attorney's fees, the district court uses the lodestar method, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Factors that may be considered in calculating the lodestar include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Id. at 461 U.S. at 430, fn.3.

If this Court decides to award CBJ its attorney's fees and costs pursuant to the AFDCPA, then it may use the Chrisco factors. In Arkansas, the following factors are relevant in determining a reasonable attorney's fee award: (i) the experience and ability of the attorney; (ii) the time and labor required to perform the service properly; (iii) the amount in controversy and the result obtained in the case; (iv) the novelty and difficulty of the issues involved; (v) the fee customarily charged for similar services in the local area; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed upon the client in the circumstances; and (viii) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney. See Chrisco v. Sun Indus., Inc., 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990). As evidenced by the

Affidavit of Rebecca Worsham, the fees and costs incurred in defending this matter, pursuant to this motion are reasonable and justified. Def. Ex. #1.

### E.    As the least likely alternative, Plaintiff should pay CBJ's costs pursuant to its Fed. R. Civ. P. 68 Offer of Judgment.

Under Fed. R. Civ .P. 68, "if the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed. R. Civ. P. 68. Here, CBJ offered to pay Plaintiff $ 2,500.00 in its Rule 68 Offer of Judgment. See Exhibit 6. Plaintiff did not accept the offer. Subsequently, the final judgment obtained by Plaintiff was not more favorable than the offer. (See Doc. 52). As such, CBJ, at the very least, is entitled to its costs incurred from the date the offer was made.

### F.    Conclusion

This case has been an extraordinary matter to defend. CBJ nor its counsel have ever encountered a debtor Plaintiff like Brandon Scroggin. Mr. Scroggin's motive in bringing this lawsuit is shown by his conduct prior to and throughout this lawsuit, his litigious nature, his online persona and postings, his desire to run up CBJ's legal fees and additionally, run up his own attorney's fees due to the FDCPA and AFDCPA "fee-shifting" provisions.

CBJ should not be forced to spend their money for attorney's fees and costs to defend his meaningless action. Instead in accordance with 15 U.S.C. 1692k(a)(3) and Ark Code Ann. §17-24-512(a)(3)(B) or, alternatively, pursuant to this Court's inherent authority, Plaintiff should be ordered to pay CBJ's fees and costs in the amount of $38,720.32.

Respectfully Submitted,

MIXON LAW FIRM
Attorneys for Defendant
P.O. Box 1442
Jonesboro, Arkansas 72403
870.935.8600, 870.935.8266(f)
rworsham@mixonlawfirm.com

By: /s/ Rebecca Worsham
      Rebecca Worsham 2009260

CERTIFICATE OF SERVICE

     I hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of Court on August 1, 2013, using CM/ECF system, which shall send notification of the filing to the following:

Victoria Leigh
Leigh Law LLC
P.O. Box 21514
Little Rock, Arkansas 72221
501-658-3108
v@leigh-law.com

      /s/ Rebecca Worsham
      Rebecca Worsham

15