**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 3 2013

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### JONESBORO DIVISION

BRANDON SCROGGIN

     PLAINTIFF

vs                           No. 3:12-cv-00128-SWW

CREDIT BUREAU OF JONESBORO
INC.,

     DEFENDANT

### <u>PLAINTIFF'S BRIEF IN SUPPORT OF HIS OBJECTION TO  THE DEFENDANT'S MOTION TO AWARD ATTORNEY'S FEES AND COSTS</u>

### <u>INTRODUCTION</u>

Comes now the Plaintiff, Brandon Scroggin, pro se, and his brief in support of his Objection  to the Defendant's motion to award attorney fees and costs, and the imposition of sanctions against the Plaintiff.

This court finds itself in a unique position when considering the Defendant's motion.  The Defendant's arguments are conclusory, unsupported by precedent, and designed to shift the focus from their client's actions to the alleged actions and motives of the Plaintiff.

The Defendant's arguments assert that there is no dispute as to validity of those arguments, whereas the Plaintiff has raised a well grounded  legal counterargument stemming from  the same set of facts.

Therefore the Court can consider the Defendant's motion from the perspective which is the norm, the Defendant arguing one set of alleged facts and actions and the Plaintiff controverting those arguments with precedent.

The Plaintiff asserts that this Honorable Court made numerous reversible errors during the jury trial. However, even though the Plaintiff feels an appeal would have successful, the Plaintiff accomplished his goal in bringing this action.

The Plaintiff was successful to the extent that the Chairman of the Arkansas State Board of Collection Agencies, Mr. Rusty Guinn, who is also the president of the defendant corporation, admitted under oath that his collection agency violated federal law and is now changing their business model as a direct result of the Plaintiff's lawsuit. Additionally, the Defendant admitted two things; that he had never, in his over thirty years in the collection business, read the section of the FDCPA the Plaintiff sued under, and that in fact once he did actually read the law, "It was right there clear as day in black and white right there in front of him and the Plaintiff was right."

Furthermore, Mr. Guinn testified under oath that he called other collection agencies around the state to make sure those agencies were aware of the law, which has been on the books since 1977, particularly the section under which suit was brought against him.

The Second Circuit Court of Appeals summed up best the positive outcome of the Plaintiff's case when they stated: "The FDCPA enlists the efforts of sophisticated consumers….as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *See, Jacobson V Healthcare Financial Services, 06-3417, (2nd Cir. 2008).*

The Defendant's assertion that they somehow prevailed in this action by escaping the statutory fine of $1,000.00 while having a jury of their peers finding that they violated the FDCPA displays to this Court exactly what the attitude of these Defendants is. They have disconnected themselves from reality, and now wish to be paid for their failed efforts in actually defending their client against the charges in the Complaint.

The Defendant is attempting to correlate that attorney fees rise and fall on the winner and loser of the case. This is a valid argument and is in fact exactly how the FDCPA's fee shifting structure works

as it relates to an **FDCPA plaintiff only** and not an FDCPA defendant. The Defendant is correct when they state that  the Court *may* award attorney fees on a finding of bad faith and harassment under the FDCPA, or a finding of bad faith or harassment under the AFDCPA. However, the Defendant incorrectly argues that a finding by the Court of bad faith  takes all discretion away from the Court and claims that  attorney fees *shall* be awarded.

While the FDCPA and the AFDCPA do require an award of attorney fees to a Plaintiff in certain cases, neither the FDCPA nor the AFDCPA contain any language specifying that the Court  *shall* award attorney fees to a Defendant.  Again, the Court may award attorney fees if certain thresholds are met, but the award is not mandatory.

The Plaintiff is essentially making an unclean hands argument here, a defense which was never previously raised in the Answer. The Court should disregard the bad faith finding by the jury, in which Plaintiff contends the Court made an error in the manner in which the jury was instructed. The Defendant's motion should be therefore denied, using the statute and a clear reading of its language as a guide.

### THE DEFENSE MOTION CITES NO COMPELLING LEGAL AUTHORITY

The Plaintiff would ask the Court to take note of the lengthy motion of the Defendant, which is three hundred forty one pages in length and cites a mere fourteen cases to support their position.   The Defendant is lengthy in arguments and criticism of online message board posting, but does not support that argument with actual legal authority.

Of those fourteen cited cases, seven are from the split authority in the seventh and eleventh circuits as to what is considered a "prevailing party" or what constitutes "a successful action" under the FDCPA *as it relates to the awarding of attorney fees to a successful FDCPA plaintiff* trying to use the mandatory fee shifting provision to recoup their attorney fees.

However, the question is why the Defendant  has decided to enlighten the Plaintiff and the Court as to what the seventh and eleventh circuit standard is in determining what is considered a "prevailing

party" or "bringing a successful action" as it relates to the mandatory awarding of attorney fees to a successful FDCPA plaintiff, when this action is plainly in the eighth circuit. Additionally, and there is no motion before the court requesting attorney fees to be awarded to the Plaintiff. Therefore, seventh circuit precedent has no merit here.

The defense spends a great deal of time and half of all their pleaded legal authorities and precedent to argue in opposition to a motion which the Plaintiff has not even brought before this Court. The Plaintiff is in agreement that if a motion for the Plaintiff's attorney fees were before this Court the cited legal authority would be relevant.

Of the seven remaining authorities cited by the defense, two are from the Arkansas Court of Appeals. The Defendant asserts that since the Courts in Arkansas have not defined bad faith under the AFDCPA that this Court should then look to how a court in Arkansas explained bad faith in actions concerning insurance claims and intentional interference with contract expectancy claims.

Except for there being an "or" instead of an "and" as it relates to bringing an action for harassment and / or in bad faith, the FDCPA and the AFDCPA are identical except for that one provision.

Therefore, it is more proper to look to the FDCPA which the AFDCPA mirrors, and the three decades of precedent from every circuit and the United States Supreme Court, and not a definition used to determine if an insurance company acts in bad faith.

The Plaintiff was an insurance claims adjuster for twelve years and is an expert on insurance regulations and the bad faith provisions in insurance statutes for the state of Arkansas. The Plaintiff has had extensive training and has testified in court for an action brought for bad faith against the company the Plaintiff was employed. Under the bad faith insurance statutes there is no "action" or lawsuit brought, but a "claim" brought by a policy holder. The insurance company is expected to conduct their investigation and comply with the insurance contract.

Under the AFDCPA the bad faith provision specifically states an action (an action is a lawsuit) has to be brought in bad faith. It is silent on any bad faith during the pending litigation.   It is well

settled that bad faith goes hand and hand with the filing of a frivolous lawsuit.

Of the five remaining cases which the defense cites, three support the position that this Court has the inherent authority to award attorney fees, sanctions or costs regardless if addressed by statute. The Plaintiff is in complete agreement that the cited authorities do in fact confirm the well settled fact this Court does in fact have authority to act and rule as the defense pleads.

The final two authorities cited deal with the calculation of attorney fees. Once again this is well settled, and the Plaintiff does not dispute whatsoever the arguments cited.

Therefore, of the authorities which the defense cites to support their position, half are arguing a position and motion which is not even before the court and the other half the Plaintiff agrees with. Plaintiff therefore requests that the Court agree with the defense as it relates to the authorities which give this Honorable Court the inherent authority to award attorney fees and costs and how those fees and costs are to be calculated.

The rest of the three hundred forty one pages are arguments framed as if the arguments are so well settled that there is no need to even question them. They include attacks on the Plaintiff's character and likeability, allege the Plaintiff engaged in conduct of which there is no proof, (including committing a felony) and other baseless accusations which even if taken as true do not change the underlying fact that the FDCPA is a strict liability statute, and the Defendant should be awarded no attorney fees or costs. Additionally, the Defendant continues its unavailing theory concerning the Plaintiff's online posting.

The message board posting as this Court has already ruled are first amendment protected rights and do not change the fact the Defendant violated federal and state law. They are now asking this Court to award them attorney fees when their defense was "we are sorry," "we did not mean to," "we just had never read the law," "the Plaintiff is arrogant," "the Plaintiff should have asserted his rights in another manner," and "the Plaintiff has an extraordinary amount of knowledge at it pertains to the FDCPA."

## ADDRESSING THE ARGUMENT THE PLAINTIFF'S SUCCESS WAS TECHNICAL AND DE MINIMIS

The Defendant in their motion  paragraph nine states the Plaintiff's success was technical and de minimis.  This is a conclusory argument that is supported with no legal precedent establishing grounds for the awarding of attorney fees or costs against the party whose  success was allegedly de minimis.

The violation which the defense argues is a de minims success is found in the *FDCPA. 15 U.S.C. § 1692c(c),* and states; *if* a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector <u>shall not communicate further with the consumer</u> with respect to such debt, except -

(1)      to advise the consumer that the debt collector's further efforts are being terminated;

(2)      to advise the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector; or

(3)      where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

This section of the FDCPA is not buried in the FDCPA and common sense would lead a reasonable person to assume a debt collector with over thirty years of experience has had the opportunity to have a consumer refuse in writing to pay his agency.   In fact, it has to be one of the most common rebuttals from consumers. In fact, Ms. Diane Jenkins testified on behalf of CBOJ and testified one of her duties was to handle "refusals to pay."

The FDCPA is a strict liability statute. The defense cites no case precedent from any court, state or federal, where a court has ruled that a de minims violation of the FDCPA somehow vitiates the violation. The reason is simple; there is no Court that has ruled that a de minis violation of the FDCPA allows the violator to escape liability under the FDCPA.

However, the Plaintiff submits the following to support his position that in fact a de minims

violation of the FDCPA is a violation of the FDCPA and there is no such thing as a technical or de minis violation of the FDCPA.  In other words the defense makes a conclusory argument and the Plaintiff responds actual well settled federal court legal precedent including this Eighth Circuit.

"The FDCPA is a strict liability statute and is to be liberally construed in favor of consumers to effect its purpose," *See, Picht v. Jon R. Hawks, Ltd. 236 F.3d 446, 451 (8ᵗʰ Cir. 2001).* "The purpose of the FDCPA is to `eliminate abusive debt collection practices by debt collectors,' and debt collectors are liable for failure to comply with `any provision' of the Act." *See Richmond v. Higgins, 435 F.3d 825, 828 (8ᵗʰ Cir. 2006).*

Even if the Court is somehow inclined to allow the Mixon Law Firm to rewrite the FDCPA, rely on their own  conclusory arguments, or give some leeway to the defense as opposed to the plain language in the FDCPA,  The Plaintiff submits the following rebuttal.

"When interpreting the FDCPA, the plain language of the statute is to be used.  With any question of statutory interpretation, the court begins its analysis with the plain language of the statute." *See, Owner-Operator Indep. Drivers Ass'n, Inc. v. Supervalu, Inc., 651 F.3d 857, 862 (8th Cir. 2011).&* "When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *See, Arkansas Supreme Court, Farrell v. Farrell, 365 Ark. 465, 231 S.W.3d 619, (2006).*

Note, the Court is to use he plain language of the statute, not what the Mixon Law Firm argues is only de minimis

And while the Plaintiff submits the well settled legal standard set by the Eighth Circuit is more than sufficient, other circuits concur, specifically; "A single violation of the Act triggers statutory liability and remedies." *See, Morgan v. Credit Adjustment Board, Inc., 999 F.Supp. 803 (E.D.Va. 1998); Clomon v. Jackson , 988 F.2d 1314 (2nd Cir. 1993)*

Note, the Court holds a single violation and does not address if the violation is technical or de minis

but only a single violation triggers liability.

The defense argument fails further because, "Courts have consistently interpreted the FDCPA to confer standing on plaintiffs who have suffered no actual harm, allowing them to sue for statutory violations." *See Jacobson v. Healthcare Fin. Servs., 516 F.3d 85, 96 (2d Cir. 2008),* & "The FDCPA permits and encourages parties who have suffered no loss to bring civil actions for statutory violations.". See, Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 307(2d Cir.2003),

Finally, if the defense and this Court needs more actual legal authority why the Defendants arguments are nonsensical and frivolous, the Court needs to look no further than the United States Supreme Court to settle that argument, specifically; "Congress has the power to "enact statutes creating legal rights, the invasion of which creates constitutional standing, even though no injury would exist without the statute." *See, Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3, 93 S. Ct. 1146, 35 L.Ed.2d 536.*

Using the argument that the Plaintiff's success was more than de minims or using the argument the Plaintiff's success was only de minims, the Defendant's position that the level of success is relevant is contrary to the Eight Circuit and the United States Supreme Court and that conclusory and frivolous argument argument should fall on deaf ears.

## ADDRESSING THE ARGUMENT PLAINTIFF'S BAD FAITH AND IMPROPER MOTIVE IN BRINGING THIS CLAIM ARE SHOWN BY HIS CONDUCT PRIOR TO AND THROUGHOUT THIS LAWSUIT.

In paragraph seventeen of Defendant's motion they state, "Plaintiff's bad faith and improper motive in bringing this claim are show by his conduct prior to and throughout this lawsuit, Plaintiff's litigious nature, Plaintiff's online persona and postings, Plaintiff's desire to run up CBOJ legal fees and additionally, run up his own attorney's fees due to the FDCPA and AFDCPA "fee shifting" provisions.

Regardless of the jury's finding, the Plaintiff asserts he did not bring this action in bad faith.  The very fact this Honorable Court ruled from the bench at the close of the Plaintiff's case that the

Defendant violated not just one but two sections of the FDCPA and refused to dismiss the Plaintiff's case, including his claim for emotional distress are the only legal standard of proof which is needed to determine, legally, the Plaintiff did not bring this action in bad faith.  Finding Plaintiff acted in bad faith *in bringing this* action at this late stage in the lawsuit is nonsensical.

For obvious reasons the defense could find no Arkansas case law or FDCPA federal law to support its position that a litigant enforcing a consumer protection statute should later be held to pay the other parties legal fees even when the facts alleged in the lawsuit were found to not only be non frivolous but proven as true.

However, while not an Eight Circuit case the Plaintiff submits the following case.  The case does involve the standard under the FDCPA of harassment and bad faith.   The case involves a finding of violations of the FDCPA on summary judgment and then the losing party trying to have their attorney fees paid.  This is basically the exact same situation as with the current case.   Just as in summary judgment the parties in the current case did not dispute the material facts and then a ruling was made based on the undisputed facts, as is done in a summary judgment motion.

In *Horkey* v. JVDB & Associates, Inc. 333 F. 3d 769 - Court of Appeals, 7th Circuit, 2003, the Plaintiff prevailed in summary judgment on three of four of her allegations of violations of the FDCPA, then a motion for attorney fees was brought by the Defendant that had been found to have violated the FDCPA because the Plaintiff did not prevail on all of the allegations of violations of the FDCPA.

The trial  Court made the obvious ruling and denied the Defendant's motion for attorney fees and then the Defendant appealed to the Seventh Circuit Court of Appeals and the that Court put a quick end to the notion a violator of the FDCPA could be awarded attorney fees.  Quoting from the order;

"Next, we consider J.V.D.B.'s third argument, that the district court erred in denying its motion for attorney's fees pursuant to § 1692k(a)(3), which allows a defendant to collect reasonable attorney's fees" on a finding by the court that an action under this section was *brought in bad faith* and for the

purposes of harassment argument"

"We review the district court's finding on the issue of bad faith for clear error." *See, Swanson v. Southern Or. Credit Serv., Inc., 869 F.2d 1222, 1229 (9th Cir.1988).* We review the *ultimate grant or denial of attorney's fees* under § 1692k(a)(3) for an *abuse of discretion.* Zagorski v. Midwest Billing Servs., Inc., 128 F.3d 1164, 1166 (7th Cir.1997). J.V.D.B. contends that Horkey violated § 1692k(a)(3)

For J.V.D.B. to prevail, it would have to establish that Horkey's *"action"* was brought in bad faith and for harassing purposes. 15 U.S.C. § 1692k(a)(3). *An "action" "in its usual legal sense means a lawsuit brought in a court." Black's Law Dictionary 28 (6th ed.1990).*

Thus, J.V.D.B. must show that Horkey's entire lawsuit, and not just her claim under § 1692c(b), was brought in bad faith and to harass J.V.D.B. Although we have not had occasion to delineate what constitutes a *lawsuit brought in bad faith* and for the purpose of harassment under § 1692k(a)(3),

**"We are confident that no sound concept of such a suit could encompass an action in which the plaintiff wins summary judgment on three of her four asserted claims and has a colorable argument as to the claim on which she ultimately did not prevail.**

The district court was, accordingly, correct to deny J.V.D.B.'s motion for attorney's fees under § 1692k(a)(3):**We cannot fathom how it could have done otherwise. In fact, at this juncture any bad-faith accusations would more appropriately be directed at J.V.B.D. for appealing the denial of its attorney's fees, but that issue is not before us"**

Unfortunately the Court allowed the defense to make this case about the Plaintiff's motives and not the actual relevant matter, which is did the Defendant violate the FDCPA and the AFDCPA. Furthermore the Court rejected well settled precedent of "Impermissible practices include harassing, oppressive or abusive conduct; false, deceptive or misleading representations; and unfair or unconscionable collection methods, the case law on this issue focuses on the "debt collector's actions," and whether an unsophisticated consumer would be harassed, misled or deceived by them." *See,*

*Freethinker v. Credit Bureau Services, Inc., 248 F3d 767, 771 (8th Cir. 2001);* "No section of the FDCPA requires an inquiry into the worthiness of the debtor or purports to protect only deserving debtors.  The FDCPA protects all consumers, from the gullible to the shrewd." *See, Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322 (7th Cir. 1997);* "The focus is on the debt collector's conduct, not the consumer's." *See, Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998). &* "Unlike most private tort litigants, a plaintiff who brings an FDCPA action seeks to vindicate important rights that cannot be valued solely in monetary terms'*,See, City of Riverside v. Rivera, 477 U.S. 561, 106 S.Ct. 2686, 91 L.Ed.2d 466* (1986). when it refused to set aside the jury's finding of a bad faith.

However, the Court now has the unique opportunity to correct itself without involving the appeals court and providing the same relief which the Plaintiff would seek in the appeals court, a denial of the Defendant's motion for attorney fees and costs.

### THE PLAINTIFF IS LITIGOUS AND PROUD OF HIS FDCPA LAWSUITS

The defense paints the Plaintiff as litigious and states the Plaintiff is a proud litigator and proud of his FDCPA lawsuits.  The Plaintiff responds to that accusation that the defense is correct, and the Plaintiff is indeed litigious. However, only as it relates to filing actions and pleadings which are based on well settled precedent, the Plaintiff actually reads and understands the law prior to arguing the law, and has never filed anything frivolous.

The Defendant is quick to note the Plaintiff filed another federal lawsuit just prior to suing the Defendant.   Again this is true. The case was filed in the same federal circuit as the current case and is and is 3:12-cv-00088-brw, <u>Scroggin v Synerprise Consulting</u>.

The Defendant was a collection agency that failed to be licensed with the Arkansas State Board of Collection Agencies, the board which Mr. Guinn has been the Chairman of for the past decade. Plaintiff did what Mr. Guinn's board could not do, and has a class action law firm that is on standby if Synerprise is found to contact any Arkansas Consumer without complying with Arkansas law.

In other words, the Plaintiff took the action the Defendant would not take. The defendant now wants to paint the Plaintiff as doing something wrong because he asserted his rights and did what the Defendant either could not or would not do.   How that is supposed to make the Plaintiff appear to the Court as unfavorable is beyond understanding.

The Plaintiff's lawsuit was anything but frivolous and even this Honorable Court refused to dismiss the Plaintiff's lawsuit.

Furthermore, the Courts are not concerned what an FDCPA defendant's intent was as it relates to violating the FDCPA.  Under the Fair Debt Collection Practices Act the Court is not concerned with the intent of the debt collector. *See, Wiener v Bloomfield, S.D.N.Y. 1995, 901 F.Supp. 771.*

## THE UNDERLYING DEBT

Again the defense makes an assertion which is supported with no legal authority when the defense in paragraphs 18-25 of their motion tries to bring in the validity of the underlying debt and the manner in which the Plaintiff disputed the underlying debt.

Again the Plaintiff will support his position with actual legal authority and well settled precedent.

It is well settled and held by every federal circuit in the United States that in determining if conduct violates the FDCPA the validity of the underlying is totally irrelevant and even if a debt is owed the FDCPA must be strictly followed and focusing on the consumer trying to somehow get out of paying a legitimate and legally owed debt is not a defense against an FDCPA action and the underlying debt is so irrelevant that even mentioning the validity of the underlying is not proper in an FDCPA actions.

*See, McCartney v. First City Bank, 970 F.2d 45 (5th Cir. 1992); Baker v. G.C. Services Corp., 677 F.2d 775 (9th Cir. 1982); Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir 997); Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998); & Turner v.Shenandoah Legal Group, et al., 2006 U.S. Dist. Lexis 39341 (E.D. Va. 2006).*

"The FDCPA  serves its purpose of curtailing abusive debt collection practices even under circumstances where a valid debt exists." *See, Nield v. Wolpoff & Abramson, 453 F. Supp 2d 918 (E.D. Va. 2006).* "FDCPA claims focus on the misconduct of the debt collector, regardless of the existence, or amount, of any debt that the debtor might owe." *See, Karnette v. Wolpoff & Abramson, L.L.P., 2007 U.S. Dist. LEXIS 20794 (E.D. Va. March 23, 2007)..* "The focus in an FDCPA action is on the debt collector's conduct not the consumer's." *See, Keele v. Wexler, 149 F.3d 589 (7th Cir. 1998).*

## THE PLAINTIFF'S REFUSAL TO PAY LETTER

When a consumer refuses in writing to pay an alleged debt, the debt collector must cease and desist further communications with the consumer except for strictly defined communications, which are clearly stated in Section 805 of the FDCPA and really needs no further clarification here. The statute speaks for itself.

The Plaintiff asserted a protection exactly as the statute allows and the defense does not get to pick and choose which sections a consumer may use to enforce their rights.   No section of the FDCPA requires a consumer to assert their rights in a manner of the debt collectors choosing.   The defense should spend more of their energy on educating themselves as to the requirements under the FDCPA and not complaining because a non attorney private consumer knows more about the collection laws and consumers rights than a licensed attorney and the chair of the Arkansas State Board of Collection Agencies.

The Plaintiff is under no obligation to assist the Defendant in complying with the FDCPA.  The Plaintiff is allowed to defend and use leverage just as the Defendant and the Defendant should have known the law they were in charge of enforcing and not simply picked the parts of the law they wished to comply with which fit best into their business model.

The Defendant is lucky they have not been caught prior to the Plaintiff and should be counting their lucky stars instead of attacking a consumer that knows more about the law than they do.   The Plaintiff

simply picked up the law and read it and studied the law.   The Defendant is free to do the same.   It is free of charge and open to anybody that wants to actually educate themselves and learn the law.   The saying is "Knowledge is Power"

## THE PLAINTIFF'S CONDUCT DURING LITIGATION

This argument can be disposed of even quicker than the argument concerning the intent of the cease communications directive.

The AFDCPA states that the defense must prove an action was brought in bad faith.   An action is the filing of a lawsuit.   The bringing of an action does not include the conduct during that brought action.

In other words the Court has to only determine if the Plaintiff brought his complete action in bad faith.   The jury has already said the Plaintiff did.   However, the Court now has to consider the question again as it relates to awarding attorney fees to the Defendant.

The Plaintiff will not repeat the numerous arguments and well settled legal precedent that confirms that legally the Plaintiff did not bring his action in bad faith.

The Court again has the luxury of using either determination and if the court finds that the Plaintiff did bring this action in bad faith or if the Plaintiff did not bring his action in bad faith the question to awarding of attorney fees to the Defendant which admitted to violating the FDCPA is still at the discretion of this Court.   Therefore, the Plaintiff will not add additional debate as to if the lawsuit was filed in bad faith because all that standard allows is for the court to then be able to use its discretion.

The evidence and sound legal authorities are clear that whatever decision the Court reaches as to if this action was brought in bad faith the Defendant is not entitled to attorney fees and any award of attorney fees and costs would be an extreme abuse of discretion which the Plaintiff is confident would be overturned by the Eighth Circuit Court of Appeals.

Therefore the Plaintiff leaves it to the Court to apply whatever judgment as to bad faith or not which the Court chooses and submits either way the Defendant is not entitled to attorney fees bases on the totality of the circumstances.

### THE PLAINTIFF'S ONLINE MESSAGE BOARD POSTINGS AND MESSAGES

Once again the Court is faced with an argument which can be quickly disposed of . The Court has already ruled the Plaintiff has a first amendment right to post on Debtorboards and the internet about this case.

Again, the defense wants to punish the Plaintiff for being rude and immature. The defense has again gone to the internet hunting information and exposing themselves to conduct they find offensive.

In other words they have again placed their hand on a hot stove and are complaining they are burned.

The Plaintiff disputes all message board posting made on Inside Arm which the defense alleges are made by the Plaintiff. Those posts are on a debt collection message board that has been at an online war with consumer websites for the past decade.

Inside Arm routinely edits postings and even its members will join as parties which have stumbled onto the message board and then will form into a character which makes fun of or attempts to make other believe they are a party which Inside Arm is at odds with. The Plaintiff is shocked the defense would even pollute and bring this online garbage into a federal court pleading. The posts should be stricken or in the alternative given no weight by this Court.

The defense has in no way offered any authentication that the posts were made by the Plaintiff other than the defense saying they were made by the Plaintiff. Any message board postings or messages which the Plaintiff has not previously authenticated are disputed in their entirety by the Plaintiff as unauthenticated hearsay and should be given no weight by this Court.

However, once again, even if the Court did want to accept the defense position that the posts and message were all made by the Plaintiff they once again are irrelevant in determining if the Plaintiff is liable to the Defendant for its attorney fees.

As the Court can take notice.  The Plaintiff is not offering one single post or message in his defense. The reason is much the same as why the President of the United States will not dispute allegations made by the National Enquirer.

The online message board posts have no place in this important legal discussion of if attorney fees should be awarded to the Defendant.  The Court only needs to make a legal determination if attorney fees are owed and not conduct a separate hearing on the morals, character, or likeability of the Plaintiff. The Plaintiff disputes any online messages or posts which he has not previously authenticated. However, the main reason for doing this is not to get out of having to admit to what he did or did not post or to put those posts into context.

The Plaintiff as he did at the trial is not interested in the online messages.  The Plaintiff does not even want to take the time to go over the submitted posts.  In fact, the Plaintiff admits he did not even look at over eighty percent of the submitted posts and messages.

There is no reason because even if they authenticate which the Plaintiff disputes, it changes nothing. The Plaintiff will concentrate of submitting legal authority and precedent and well settled legal theory and not a bunch of message board posts that could have been made by anybody, could not be in the proper context, can't be authenticated and are irrelevant to the limited scope of the Defendant's motion, should the Plaintiff be ordered to pay their clients attorney fees even after their client admitted to violating the AFDCPA and the Court found the Defendant did indeed violate the AFDCPA and the FDCPA.

## DISCUSSION OF DEFENDANT'S ATTORNEY FEES AND COSTS

The Plaintiff has major concerns about the validity of the submitted legal fees.   The Plaintiff attempted to depose Ms. Worsham to obtain more information but Ms. Worsham refused and sent a letter to the Plaintiff that she would seek sanctions if the Plaintiff even tried to depose her.

Ms. Worsham advised the Plaintiff all of the information he was requesting could be obtained by other means and basically he just needed to ask for the information and not depose Ms. Worsham.

The Plaintiff did just this and then of course how Ms. Worsham and the Mixon Law Firm have done throughout this whole lawsuit, I was ignored and my emails were not returned and my requests for more information went unanswered.   The Plaintiff is attaching the letter which Ms. Worsham wrote in bad faith to the Plaintiff.

The Plaintiff is already suing Ms. Worsham and the Mixon Law Firm for libel and filing bar complaints so there is really no reason to discuss Ms. Worshams unprofessional behavior.   However, the Plaintiff would like the Court to take note of one important point.

Ms. Worsham and the Mixon Law Firm are accusing the Plaintiff of abusing the court process and acting in bad faith.   However, it is Ms. Worsham which has accused the Plaintiff of a felony in her pleading when there is no such evidence, has failed to cooperate with the Plaintiff after sending the Plaintiff a letter demanding he not even ask the court to depose her, and has polluted this case with online message board postings and the most irrelevant discussions in an effort to turn this case into Rebecca Worsham v Brandon Scroggin because of Ms. Worsham's extreme disdain for the Plaintiff.

The Plaintiff has done nothing but know the law, assert the law, file and action that had merit and was not dismissed by this Court, and because the Plaintiff is rude and arrogant Ms. Worsham feels it is her right to drag the Plaintiff though this process of demanding legal fees for a client that admitted to violating federal and state law.

What is even more shocking is the sheer audacity of Ms. Worsham to expect that this Court should

order the Plaintiff to pay over $5,000.00 in legal fees for bringing a motion against the Plaintiff which asked this court to violate the first amendment rights of the Plaintiff and then when Ms. Leigh responded the Plaintiff had a first amendment right double down and argue even harder the Plaintiff did not have a first amendment right to post on the internet.

Furthermore, the defense admitted they knew the Plaintiff was not an attorney and then went to great lengths to have this Court order the Plaintiff to comply with a code of conduct only required of licensed attorney's.  The defense even put in their civility motion, "if the Plaintiff were an attorney" and then argues their motion for eight pages when the Plaintiff is not an attorney.

Now Ms. Worsham wants this Court to order the Plaintiff to pay for those attorney fees for bringing a motion to violate the first amendment rights of the Plaintiff and to order the Plaintiff to take an oath only for attorney's knowing the Plaintiff was not an attorney which the Court denied in one sentence in the Courts order and then in the same breath argue the Plaintiff is abusing the system and needlessly running up the costs of this action.

The Plaintiff asks this Court to award the Plaintiff a paralegal rate of $75.00 per hour to research and respond to this utter garbage pleaded by Ms. Worsham and sanction her and the Mixon law firm in an amount the Court feels is appropriate for the time the Plaintiff has had to waste defending against this frivolous motion that asks for this Court to sanction a legal absurdity.

Furthermore, the offer of judgment was made after the deposition and the defense is asking for fees associated with the offer of judgment.   In addition the alleged $5,000.00 offer was not made as part of an offer of judgment and therefore is irrelevant in determining any fees or costs owed by the Plaintiff. The defense made a bad faith $2,500.00 all inclusive of attorney fees offer two weeks prior to trial for a case that had gone on over year and in which Plaintiff's legal fees were estimated to be in the $30,000.00 range at the time of the offer of judgment.

The offer of judgment was not in good faith and the defense knew there was no way the Plaintiff

could accept this offer but they wanted to ensure a little back up in case they got lucky at trial  They did

get extremely lucky at trial and are now wanting to cash in on that bad faith offer of judgment.   The

Court should sanction the defense for even trying to enforce this bad faith offer of judgment.

However, the Plaintiff's position is no legal fees and costs are owed to the Defendant so it really

matters not to the Plaintiff if the Defendant wishes to inflate their legal fees or attempt to obtain fees

for losing motions because any award of fees or costs will be appealed by the Plaintiff so the Plaintiff is

preserving the record and does dispute the validity of the legal fees and bringing to the attention to the

Court Ms. Worsham lied to the Plaintiff and did not offer any further clarification even though she

advised by letter she would.  However, the Plaintiff is confident no fees will be awarded so the issue

will soon be moot.

## THE PLAINTIFF CARRIED OUT THE CONGRESSIONAL INTENT OF THE FDCPA AND SHOULD NOT BE PUNISHED BECAUSE OF HIS PERSONALITY AND OUTSPOKEN MANNER

The fact the Plaintiff is even having to defend against this motion is a travesty of justice.  The

Plaintiff learned the law, enforced the law, carried out the congressional intent of the FDCPA and was

awarded no monetary damages, not even given his costs to file this action, and now the Plaintiff has to

defend against a motion for attorney fees from a Defendant which took the stand and admitted to

violating the FDCPA and in which the Court and a jury also determined violated the FDCPA because

the Defendant is mad about the manner in which the Plaintiff went about enforcing the FDCPA.

The Plaintiff asks the Court to consider the well settled legal authority as to who can bring an

FDCPA action and how the FDCPA was structured as to who would bring the most of the actions.

"The FDCPA enlists the efforts of sophisticated consumers….as "private attorneys general" to aid their

less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are

assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *See,*

*Jacobson V Healthcare Financial Services, Second Circuit Court of Appeals, 06-3417,*

if you violate the FDCPA and the AFDCPA in the state of Arkansas is does not matter who you are, you must be held accountable and attacking a private consumer trying to enforce their rights is a disgusting and cheap cowardly low blow and this Court will not sanction such conduct on the part of Ms. Worsham, the Mixon Law Firm the Credit Bureau of Joneseboro and Rusty Guinn.

RESPECTUFLLY SUBMITTED,

Brandon Scroggin

pro se

acsscroggin@gmail.com

870-897-3872

I, Brandon Scroggin, do hereby certify that the above brief in support of Plaintiff's motion for an order to deny the Defendant's motion for attorney fees and costs has been emailed to Ms. Rebecca Worsham, attorney for the Defendant on September 3, 2013, and emailed to rworsham@mixonlaw.com

# MIXON LAW FIRM

ATTORNEYS AT LAW

DONN MIXON
Attorney

REBECCA WORSHAM
Attorney

SHIRLEY PARK
Certified Legal Assistant

505 UNION
P.O. BOX 1442
JONESBORO, ARKANSAS 72403

WRITER'S EMAIL: rworsham@mixonlawfirm.com

KELLY SMITH
Administrative Assistant

TELEPHONE
(870) 935-8600

TELEFACSIMILE
(870) 935-8622

August 14, 2013

*Sent By Email Only:*
acsscroggin@gmail.com
Brandon Scroggin
526 W. Monroe
Jonesboro, Arkansas 72401

> ### Re: Brandon Scroggin v. Credit Bureau of Jonesboro, Inc.
> ### United States District Court of the Eastern District of Arkansas
> ### Jonesboro Division, Case No. 3:12-CV-00128-SWW

Mr. Scroggin,

 Since an Order of Withdrawal has been officially entered in this matter, I will now communicate with you as a pro se plaintiff. I am not consenting for you to take my deposition. The fact that I filed a motion for my client's attorneys' fees and costs does not open the door for you to take my deposition. I realize that attorneys are not immune under the rules of civil procedure from being deposed. However, depositions of opposing counsel are disfavored by the Courts and can only occur in limited circumstances.

 In *Shelton v. American Motors Corp.*, the Eighth Circuit Court of Appeals developed a stringent three-part test that must be met before opposing counsel can be deposed by an opposing party. 805 F.2d 1323 (8th Cir. 1986). In order to take my deposition, you must establish that (1) no other means exist to obtain the information sought, (2) the information is relevant and nonprivileged, and (3) the information is crucial to your case. *Id.* at 1327.

 You cannot meet the first part of this test as there are other means for you to obtain the information sought. You can verify or challenge the reasonableness of our firm's fees and costs incurred in this matter by the billing statement that was attached to our motion. In regards to verifying my claims as to my class rank and such, I can provide you with documents upon request.

Letter to Brandon Scroggin
August 14, 2013
Page 2

As to the second factor of the test, the information you seek would be relevant to your Response. However, it will likely raise issues of the attorney-client privilege. As to the final factor, any information that you seek from me is not "crucial" to your Response. Thus, you cannot meet the three-part test set out by the Eighth Circuit.

"Taking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and costs of litigation." *Id.* at 1327.

"The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the costs of litigation, demeans the profession, and constitutes an abuse of the discovery process." *Id.* at 1330.

With this letter, I am putting you on notice that I will ask the Court for further sanctions, including my attorney's fees and costs, if you continue your pursuit to depose me. You have no basis. It is clear that you desire to further harass me and drive up my client's legal fees. If you would like for me to provide you with further documentation regarding our Motion for fees and costs, please let me know.

Sincerely,

MIXON LAW FIRM

Rebecca Worsham

Cc:
Donn Mixon
Client