IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

BRANDON SCROGGIN,     *
      *
     Plaintiff,    *
vs.     *    No. 3:12-cv-00128-SWW
      *
      *
CREDIT BUREAU OF    *
JONESBORO, INC.,    *
      *
     Defendant.    *

## OPINION AND ORDER

Brandon Scroggin brought this action against Credit Bureau of Jonesboro, Inc. (CBJ), alleging, *inter alia*, that CBJ violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*., and the Arkansas Fair Debt Collection Practices Act (AFDCPA), Ark. Code Ann. § 17-24-501 *et seq*., in its attempts to collect a debt for medical services allegedly owed by Scroggin. Following the conclusion of discovery, CBJ filed a motion to dismiss and for order of civility based on comments Scroggin posted on certain websites. CBJ argued that Scroggin's posts demonstrated that he was not using the law's procedures for legitimate purposes but rather for entertainment and harassment purposes. Although Scroggin's posts were troubling, the Court denied CBJ's motion to dismiss and for order of civility and stated that it would not prohibit Scroggin from

commenting on this action given the existence of valid First Amendment concerns.[1]  However, the Court informed Scroggin that with the exception of references to offers of settlement, Scroggin's posts and any future similar posts identified by CBJ would be admitted into evidence under Fed.R.Evid. 801(d)(2).

The matter proceeded to a jury trial in Jonesboro, Arkansas on the morning of July 15, 2013.[2]  The following day, the jury delivered a verdict finding, *inter alia*, that CBJ twice violated the FDCPA and the AFDCPA when CBJ contacted Scroggin after it received a written cease and desist letter (C&D letter) from Scroggin and communicated to a third party that Scroggin owed a past-due debt.[3]  However, the jury did not award Scroggin any actual or statutory damages for CBJ's violations of the FDCPA and AFDCPA.  The Court entered judgment in

---

[1] CBJ's argument for dismissal centered on ethical standards governing attorneys.  The Court noted that Scroggin is not an attorney but a citizen posting on public message boards.

[2] Scroggin also brought claims under the Arkansas Collection Agency Act, Ark. Code Ann. § 17-24-101 *et seq.*, and the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*, but Scroggin dismissed those claims during the pre-trial conference on the morning of trial.  During that same pre-trial conference, the Court denied as moot Scroggin's motion *in limine* that sought to prohibit CBJ from referencing at trial Scroggin having been arrested in 2010 and charged with DWI, refusal to submit, fleeing, felony aggravated animal cruelty, driving on a suspended license, littering, reckless driving, following too close, and resisting arrest as CBJ affirmed it would not reference those matters at trial.  Scroggin's motions *in limine* regarding the bona fide error defense and the validity of the underlying debt were resolved in Scroggin's favor.

[3] According to Scroggin, this second violation occurred on April 27, 2012, when CBJ left a voice mail for Scroggin that was listened to by Scroggin's friend, Kirby Wilson.

accordance with the jury verdict on July 18, 2013.[4]

Now before the Court is CBJ's motion for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B) or, alternatively, pursuant to the Court's inherent power on grounds that Scroggin brought this action in bad faith and for the purpose of harassment [doc.#58]. Scroggin has responded in opposition to CBJ's motion.  For the reasons that follow, the Court grants in part and denies in part CBJ's motion for attorney's fees and costs.[5]

## I.

The FDCPA provides that the court may award to the defendant attorney's fees and costs "on a finding by the court that an action ... was brought in bad faith *and* for the purpose of harassment," 15 U.S.C. § 1692k(a)(3) (emphasis added), while the AFDCPA provides that the court may award to the defendant attorney's

---

[4] Scroggin filed this action *pro se* but attorney Victoria Leigh entered an appearance on his behalf and represented him at trial.  Following the trial, Scroggin filed a notice stating he had fired Leigh and was again proceeding *pro se*.  Leigh, in turn, filed a motion to withdraw, which the Court granted.

[5] Although there is a dearth of case law on the AFDCPA, the AFDCPA largely mirrors the FDCPA.  Accordingly, unless noted otherwise, any discussion or finding by the Court with respect to the FDCPA applies equally to the AFDCPA.  *Cf. In re Humes*, 468 B.R. 346, 353 n.4 (Bankr. E.D. Ark. 2011) ("For all purposes relevant to the determination of this matter, the provisions of the FDCPA and the AFDCPA are identical. Thus, the Court's rulings on the Motion for Summary Judgment with regard to the Plaintiff's FDCPA claims apply equally to the Plaintiff's corollary AFDCPA claims.").

fees and costs "if the court finds that an action ... was brought in bad faith *or* for the purpose of harassment."  Ark. Code Ann. § 17-24-512(a)(3)(B) (emphasis added).   The Court has carefully considered the matter and finds that CBJ has affirmatively shown that Scroggin brought this action in bad faith and for the purpose of harassment.[6]

"[B]ad faith" is defined as "[d]ishonesty of belief or purpose."  *Grand Canyon Skywalk Development, LLC v. 'Sa' Nyu Wa Inc.*, 715 F.3d 1196, 1201 (9th Cir. 2013) (quoting Black's Law Dictionary 159 (9th ed. 2009).  See also Arkansas Model Jury Instructions–Civil § 403 (2013) ("Bad faith" means "conduct that is dishonest, oppressive, or carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge"); *State Auto Property and Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 56, 991 S.W.2d 555, 559 (1999) (same).  "Harassment" is defined as "'words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose.'" *Adams v. Ford Motor Co.*, 653 F.3d

---

[6] "To recover attorney's fees under the FDCPA, the prevailing defendant must show affirmatively that the plaintiff brought the FDCPA claim in bad faith and for the purpose of harassment." *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1211 (5th Cir. 1985).  Although the matters comprising Scroggin's bad faith and harassment were admitted into evidence and relevant to the credibility of Scroggin's evidence on damages, the Court, irrespective of the jury's view of what the evidence did or did not show, herein makes its own independent determination with respect to whether CBJ has affirmatively shown that Scroggin brought this action in bad faith and for the purpose of harassment.

299, 307 (3rd Cir. 2011) (quoting Black's Law Dictionary 784 (9th ed. 2009).  See also Webster's New Collegiate Dictionary 522 (ed. 1977) (to "harass" is to "exhaust," "fatigue," or "annoy persistently").

Scroggin posted numerous comments regarding this action on various websites–including www.creditinfocenter.com, www.debtorboards.com, and www.insidearm.com–under the posting handles "Coltfan1972" and "Todd Bean" and he sent emails regarding this action to CBJ's counsel.  Along with his emails, the Court admitted into evidence over 6,500 of Sroggin's posts (with references to settlement redacted) pursuant to Fed.R.Evid. 801(d)(2) as statements by a party opponent.  In addition, CBJ has attached to its motion for attorney's fees and costs certain of Scroggin's posts from the website www.insidearm.com that it states it learned about after trial.  Scroggin's posts and emails as set forth below (with misspellings and grammatical errors left intact) fully support a finding that Scroggin brought this action in bad faith and for the purpose of harassment.[7]

---

[7] Scroggin stipulated to the authenticity of the posts admitted at trial (only a portion of which were specifically presented to the jury) and he did not dispute that the emails were his. Scroggin does, however, dispute the authenticity of the posts from www.insidearm.com, stating, without support, that "[t]hose posts are on a debt collection message board that has been at an online war with consumers websites for the past decade" and "Inside Arm routinely edits postings and even its members will join as parties which have stumbled onto the message board and then will form into a character which makes fun of or attempts to make other[s] believe they are a party which Inside Arm is at odds with."  Scroggin, however, does not dispute that he has posted on www.insidearm.com under the posting handle "Todd Bean" and he does not claim that the particular posts from that website that are submitted by CBJ were altered or edited in some way.  Scroggin does assert that "[a]ny message board postings or messages which the Plaintiff

Prior to filing this action, Scroggin stated that he wanted to maximize the retaliation to CBJ, do some damage, and hopefully goad or force CBJ to an actual trial:

> However, since the last agency just folded, bent over and grabbed their ankles and said do with us as you please, I've decided to "step my game up" and let's try to send a little clearer message that these violations will not be tolerated. I mean how much dadgum emotional distress is a person supposed to endure.
>
> So, since I will obviously whip the dog out of them and defeat is not even a remote option (if you don't believe me just ask me), it's just a matter of how bad and for how much at this point. I want to maximize the retaliation, do some damage and hopefully goad and/or force them to an actual trial.

As part of his scheme to damage CBJ, Scroggin "set up" CBJ into violating the FDCPA and AFDCPA by sending a purposely ambiguous C&D letter to CBJ that contained not only a refusal to pay but also Scroggin's explanation of why he didn't think he owed the debt in question.  The C&D letter, dated March 26, 2012, provided:

---

has not previously authenticated are disputed in their entirety by the Plaintiff as unauthenticated hearsay" but Scroggin fails to identify any posts to which he objects and, indeed, states that he "is not interested in the online messages," that he "does not even want to take the time to go over the submitted posts," and that he "did not even look at over eighty percent of the submitted posts and messages."  Scroggin cannot credibly dispute as authentic posts and messages he states he does not want to take the time to go over and did not look at and the Court accordingly rejects Scroggin's blanket assertion that the www.insidearm.com posts identified by CBJ are not his. The Court notes, however, that it would find that CBJ has affirmatively shown that Scroggin brought this action in bad faith and for the purpose of harassment even if based only on the uncontested posts and emails specifically presented to the jury.

In response to the letter you sent me that has dated February 27, 2012, and the account number from you of 2249932.  I refuse to pay this debt because I don't think I owe that because I was only there [at St. Bernard's Medical Center] for an hour and then left after I started feeling better.

Scroggin's efforts to set up CBJ succeeded as his ambiguous C&D letter had the effect of prompting CBJ to make contact with him to explain why he owed the debt.  In this respect, Scroggin, who described CBJ's voice mail that was listened to by friend Kirby Wilson as "an early Christmas present," stated as follows:

[I]f you send them a refusal to pay letter it acts as a C&D.  They are more likely to continue collection activity with a refusal than a C&D.  At least that is what happened to me.  Of course, I made my refusal look like it was written by a four year old so they would think they could just run over me.

* * *

I mean, I'm in federal [court] right now because "I refused to pay" when I wanted to C&D.  It's pretty obvious that 99.9% are going to write a long drawn out letter for a C&D instead of I refuse to pay.  Too bad for them I'm that .001% and they know they were set up and are screaming and hollering unclean hands.  We all know where that argument is headed.[8]

Scroggin also advised another forum member on how to "solicit" an FDCPA violation:

If you want to solicit the FDCPA violation, send them the refusal to pay with a reason.  They are more likely to write you back to show

---

[8] This post was written after Scroggin filed this action.

you how you are wrong and they are right, in other words argue with you.  Who cares, what they say, it's an FDCPA violation and it's strict liability.

After filing this action and being notified that CBJ requested a deposition, Scroggin exclaimed, "[o]h happy day and living right I guess!!" and "[t]o say I'm looking forward to it is like saying a six year old is excited on Christmas morning." He also stated he forced CBJ to abide by his schedule and discussed his intention to turn the deposition into a circus:

> [I]'m forcing them into a Saturday deposition because their time is running out and now their available dates don't work with my busy schedule, but I have seven unreturned attempts trying to schedule a depo when I knew they were just bluffing.
>
> So now they will do things on my schedule and I can promise you it will be a full blown three ring circus when that deposition get rolling.

Scroggin later stated that he chose a "Saturday morning because I was too busy during the week doing nothing."[9]  Scroggin also again discussed his excitement and plans for turning the upcoming deposition into a circus:

> I want to thank all for the well wishes and while I will turn this into a circus I still will make sure to concentrate on making sure I don't say anything that hurts my case.

---

[9] Scroggin testified at trial that he was lying in his post about forcing CBJ into a Saturday deposition.  In this respect, Scroggin testified that when he is online he lies at times and is playing a "character" or "persona."  The Court notes, however, that Scroggin also stated that he "know[s] how to act in court and ... can play the role of the beat down consumer."  In any case, the Court carefully listened to Scroggin's testimony and observed him on the stand and found his credibility to be lacking.

* * *

I have not been this excited in at least 20 years.  I'm actually getting ready to sit down with a debt collector attorney that their client has admitted to violating the FDCPA, and in which they have no legal argument that will hold water, and they are going to go toe to toe with Coltfan.  All of the things I've been waiting to say and do, I'm getting ready to have the opportunity. I don't even care if I damage my emotional distress and I just have to rely on statutory and state damages plus costs. This is going to be a great day and you will all be there in spirit and I will know it.

I will not let you guys down. I can't ever see being in this position again and I really don't think I'll get a trial out of this so I'm going to make it one for the ages. I will cash every check I've been writing and I won't back down and I won't be intimidated. I'm usually the one giving the encouragement and telling others what they need to do and say.

I can promise you friends, tomorrow will be a special day for ALL of us.

In stating that he was willing to sacrifice his actual damages in order to turn his deposition into a circus, Scroggin acknowledged that his claim for actual damages was not sincere.  Scroggin stated as follows:

I don't need the money, I just need your [debt collector's] money to buy crap that I don't want to buy with my money.  I'm thinking about inviting CIC [www.creditinfocenter.com] members to Jonesboro, Arkansas for a victory celebration.  We can hit the finest steakhouse here, Outback of course.  Then we can take the short trip to Memphis and hit the dog track and put a C note on every dog that takes a big dump one minute before every race, hit the local strip club and help some girls work their way through college, and then come on back home and top it off with some triple waffles at the Waffle House and sit around smoking cigars and talk about how smart we are while

tipping Flo a fat George Washington every time she plops down
another triple waffle.  Now that's not just having class but having
style!!!!!!"

Scroggin also advised another forum member on how to manipulate a claim

for damages:

Seriously, go to the doctor and complain of stress.  When the doctor
and/or nurse asks you what different events have been happening in
your life, unload on them about this collection crap.  They will note it
in your chart and I can assure you that you will be glad you did a few
years later if this gets close to trial!!!!!

Following his deposition, Scroggin stated he was not concerned about not

receiving actual damages:

Still working on the video [of the deposition] and I'm not worried one
bit....  It's a strict liability statute and they admitted breaking the law.
I might not get emotional distress and that's fine....

Also, in the depo, as you will see I never said I did not suffer any
emotional distriess and the whole time I made references to my own
emotional distress usuing my own testimony over and over.  It might
not get me an award but it won't lose me the case.

Scroggin also set forth his observations of what occurred during the

deposition and, in so doing, belittled his claim for actual damages and further

discussed his intent to goad CBJ into a trial:

She [CBJ's counsel] asked every question 10 different times 10
different ways and at one point leaned forward with this you are so
full of crap look on her face. I just hammered her and basically went
word for word what I said. I even said I have different levels of
emotional distress and that I was also suing for just plain old pissing

me off.

\* \* \*

I wanted her to know that out of all the people in the country they could have chosen to take a stand against they drew the one person in the whole country that was having the time of their life....[10]

\* \* \*

I wanted her to be real clear that the depo might have been scheduled as an intimidation tactic, but that plan, just two minutes in, had failed miserably and the next three hours were going to be a total nightmare.

\* \* \*

I don't know if I did enough to goad them into a trial but I pulled every arrogant one liner I could and was just daring them to a trial. Rest assured I did everything humanly possible to piss them off enough to abandon common sense and throw the checkbook out and try to show me.

\* \* \*

Now they are stuck.  They have tons of money tied up, they now have a pissed off insurance company that I'm sure is getting ready to put an end to this circus and mostly I'm daring them into a trial.  Wait until you see the video.  I give new meaning to arrorgance.  I am just saying please take this to trial, but I'm trying to make them throw caution to the wind and say we will show this guy.  However, I know how to act in court and I can play the role of the beat down consumer just as I can the arrogant come at me pro litigator.

---

[10] Scroggin stated how "they have no idea of the two by four getting ready to slap them in the face, so that makes the aderline rush that much more of a high, and I guess honestly addictive."  At trial, Scroggin acknowledged that he was getting an adrenalin rush "from all of this."

* * *

They will lose and I will win, but how much and when are still the
only thing to be decided.  I'm just too damn crazy to care and they
know it.  They let this get away from them and now it's a full blown
circus and they just don't know what to do and I'm loving ever min of
it.  I don't care if I get a grand at trial.  I just want a trial and they
know I'm not just saying that, and that' what makes me so dangerous.

Scroggin also stated he was determined to take this matter to trial

notwithstanding its impact on his damages and even though he believed he could

win on summary judgment.  Scroggin stated:

[N]o summary judgement is going to be filed or they better not be
filed.  The date [for filing dispositive motions] was extended but I told
the attorney no way team Coltfan was to file any type of summary
judgement, after the depo, because we will win it and I don't want it
to end that easy.  Honestly I think I win more with an offer of
judgement or at trial and not at summary judgement.  Summary
judgement is too easy of a victory and I think they want that.

Scroggin also boasted that the FDCPA essentially allowed him to continue

this action for his entertainment and to harass CBJ and its counsel.  For instance,

Scroggin stated:

She [CBJ's counsel] actually looked like I just gave her a gift by
volunteering my posting handle. She is going to be very disappointed
when the motion in limine restricts her from even letting a skunk
loose in the courtroom…. God, I love strict liability when the FDCPA
violation is not even disputed. A mandatory award is required, even if
a dollar, if I win at trial and then that triggers all costs for them to pay
and even if the unthinkable happened and I lost, it's obvious it's not a
bad faith suit so they can't collect any fees from me. I can just sit back
and be as arrogant as I want and they can't do a damn thing about it.

Scroggin also discussed his intentions in damaging the debt collection industry in general and CBJ in particular.  For example, Scroggin stated as follows:

> I'm not going to take down this industry no more than suing the tabocco industry takes out the tabocco industry. What I am going to do and have been doing is put a deep dent in the pocket book of this agency.  I'd tell you the figures I've turned down to settle but of course you would not believe me and then if I provided the emails you would say they are fake.

> I'm driving a mack truck into this one agency [CBJ] checkbook, insurance premiums, lost revenue from time dedicated to this suit, making it a pubic record in a relatively small town where any other attorney in the country that goes to Pacer can see this agency has lost (which they will lose)

> Go pull their motions to dismiss, for civility, to gag me, to not release the depo, to put me under court supervision for what I post about the case. Go read it yourself in the public record loser, the case number is posted. Then tell me this is nothing and nobody cares.

> I'm now working for a law firm and we are going through this agency court records and we plan on suing them over and over and over and over again and aggressively going looking for clients. We will use this case as a selling point and hope there is the blood in the water and sharks start to circle.

> \*   \*   \*

> It's black letter of the law ... I refuse to pay, you contact me for any other reason your sued, simple as that.

> Then when I sue you and you know the stat max is 1K and you want to try to run me out of the game, get ready. That is when I'm going to make you bleed. Then you figure it out and offer me the stat max, I'm saying NO.

You want to call me in for a depo, fine, I'm turning it into a circus, driving that thing right through the roof, flipping it on you, getting an attorney of my own that gets the atty fees I can't get (at least awarded to me) and when we are said and done you are now stuck with already throwing a ton of money at this to try and still stay under your 10K deducible.

But no I now won't play and no I'm not settling for the 5K you offered (it's on the video their attorney even says you turned down 5k) and the other now offers I'm not disclosing.

You are now going to bleed. I'm hitting you at your 10K ded, your ins will kick in, you will have a public record of this for any other consumer or consumer law firm to see, and when I win in court my judgement won't come with a non disclosure agreement.

*   *   *

10K is not chump change and then there are now atty fees on both sides. Plus there is the chance of a runaway jury verdict that could I fully admit get overturned but exceed the policy limits of 100K and now to get that overturned you're out a ton.

If you even dream about violating my rights under the FDCPA the first thing you do is better apologize and pray I don't sue you for even dreaming about it.

Deal with it. I'm going to win and it is going to cost a lot more than you guys are acting like nobody cares about.

*   *   *

I'm going to keep doing it over and over and over and over and over again. Getting behind on bills does not give somebody a license to treat others like garbage.

And they screwed with the wrong person because I'm smart, I'm determined and you know what you just said it yourself I can get

under your skin. I know the buttons to push and I know when to back off and when to push hard.  Watch the video.  If it is an important question I get serious and go at it with yes or no and a dead stare.

* * *

My atty let me read some of the emails where they basically laugh me off and then finally throw a settlement bone at me on there on time and terms.  But NO, flipped it on them and now I'm pulling the strings and I've got this thing turned into the biggest train wreck there is and all you have to do is pull the case from Pacer to see I'm not lying.

Scroggin also discussed his interest in his attorney, with whom he states he

was employed, getting awarded attorney's fees:

We're getting paid when we win or that collection agency will have a new owner. In fact, all they are doing right now is just driving my attorney's legal bills (which I now work for).

I have a vested interest in her being awarded attorney fees!! That's all I'll say about that right now at this time.

After the trial concluded, Scroggin admitted that he was relying on

attorney's fees to justify his continuing this action:

We were banking on the attorney fees.  We knew no actual damages and figured a few hundred tops on Statutory but that would trigger the fee shifting.

Following the unfavorable result he received in this action, Scroggin's fee-

generating arrangement with his attorney/employer began to show strains.  In

response to a question from a forum member about whether Scroggin was still

working with his attorney in light of the result of this action, Scroggin answered as

follows:

> I guess.  We had several cases ready to file and/or send demands.  I was doing all the work, pleadings, etc.. and she was signing off.  I'm not sure now.  I hate, hate, hate bluffing on this type of stuff and I see that being the way these will be handled.  There is no way we can go to court on a few of these cases ... I just can't stand to bluff and then somebody call it and then I know we can't do what we say or go to court with them. She said before hiring me she was settling these for around 500.00 to 1K and with me wanted to triple that. Not a problem at all but if we can't back it up in court the word will quickly get out and creditors will just start calling the bluff.

Scroggin further stated that "99% of cases settle because most debt collectors ... have no guts to go all the way. So she and I will still be able to make good money bluffing our way through, because [the debt collection] industry rarely fights."  In the end, however, Scroggin apparently could not get over his anger with his attorney/employer and what he perceived to be a debacle at trial.  Scroggin stated:

> I guess it is time to move on from how horrible she was but every time I get ready to another subject like you just brought up, the depo, gets mentioned and I recall the subject in my mind and just "lose it" in my mind with anger and disbelief.

> I know this all sounds like sour grapes and passing the buck (again, losing had a TON to do with me) so I'm trying to move on, but it is hard when I start thinking about just the total debacle.

Ultimately, as previously noted, Scroggin fired his attorney–or quit his employment with her.

Scroggin also stated that upon realizing the trial was not going as well as he had anticipated, he attempted to deliberately cause a mistrial:

> You should have seen me on the witness stand just dead staring into my attorney's eyes while answering irrelevant questions from the stand.
>
> I was feeding her the objections from the stand by answering the question by saying, "Well the question is irrelevant, argumentative, and asks me to speculate, pause, pause, pause, pause, cough, get a drink of water, but to answer your question," then give the answer.
>
> Just deer in the headlights is all I saw from that stand. I started to object once myself but thought better. I even tried to cause a mistrial on the second day while I was on the stand.
>
> However, the attorney for the other side jumped up a split second into my answer and asked for a side bar, then both attorney's came over and I was instructed not to say what I was going to say.
>
> And it was explained to me that the judge during the side bar was ordering me not to go down a road I was getting ready to go down.

Following the jury's verdict, Scroggin stated that he would not abide by any judgment awarding CBJ relief:

> They are collecting nothing from me, probably won't get anything even awarded but I won't pay it even if its awarded and will fight them to the ends of the earth and cause them thousands trying to collect and they know it so I doubt they even try.

Although Scroggin did not receive the result he had anticipated, he made clear that this was not his last FDCPA action and that he would continue the type of conduct he exhibited in this action:

I don't plan on that being my last FDCPA case by any stretch of the imagination, and I would roll out the red carpet and welcome this law firm as my opponent in any future cases.

I will say this, she [CBJ's counsel] has great potential and my attorney has zero potential.

\* \* \*

And no you've not seen the last of me and heaven help the next poor collector or agency. They are not going to know what hit them. I'm getting ready to unload on them and use this case as motivation.

They are going to think they have run into the most crazed debtor with actual legal knowledge on the plant. It's going to be after 9/11 when I was just walking around saying give us somebody to bomb off the face of the earth, anybody, I don't care who they are or what they did or did not do, just send some war planes over and level somebody.

That's what we have hear. I don't care if it's a threat to kill me left on my voice mail or they forget to cross one "I" or one "T" I'm unloading on them and they are going to pay me an insane amount of money or I'll force them right back into that federal courtroom and this time I won't have that attorney and I'll be running the show and you can bet your ass I won't lose and you can bet your ass it will be the most expensive case they have ever tried.

I don't care if I kill over dead right after the case is over, my mission will be complete.  Somebody is getting ready to pay for this and call me anything you want but you know I can pull it off and you know I'll do every dang thing I just said I would.

The letters are going out in the mail and the recorder is set up. God help the next agency that calls or writes because it's just over.

\* \* \*

It's all good though, just like this case you will get the next case

number and rest assured I'll be more than making up for it. Shoot losing this case will probably benefit me on the next one for just the sheer determination I'll have and the make them bleed approach I'll take.

\* \* \*

The next case (and we all know there will be) I'll be back with the case number. Don't even know who the Defendant will be or the facts and you already get 20-1 odds if you want to put your money where your mouth is and actually bet not only will I win but will win EVERY claim I make in the lawsuit.

Scroggin also posted offensive and sexist comments about CBJ's counsel.

For example, Scroggin posted the following concerning the appearance of CBJ's

counsel at the deposition:

It was not her best day for sure. Since it was a Saturday she was in blue jeans and looked like she just got out of bed. Almost like she was not going to be dressed up on a Saturday and was not real happy that she had to be at work on a Saturday (of course Coltfan was in a suit and tie looking like he was ready for a federal trial, but that is just how I roll).

I've seen pictures of her so I know the potential is there. Plus she just had a kid and her weight was excellent and she had a nice rack. So she was not having a very good day and of course when I walked in it just went downhill from there so I'm looking at the big picture and saying she was fine on that day and it was obvious when she wants to look hot she can look hot.

Overall, compared to what I've gone against, she was hot for sure but overall, yeah, she was hot. The attorney for one of the JDB I went against a few years ago I swear was trying to get me to drop the case by seeing just how disgusting she could look every time we went to court. I swear she got beat to an inch of her life by the ugly stick

before each hearing.

However, here, there was not that problem. So thank you so much for bringing up the most important detail that I should have immediately addressed. She was not hot that day but very doable and yes hot.

In response to CBJ's counsel examining his posting activity, Scroggin posted the following, which he acknowledged at trial was directed at CBJ and its counsel:

> **Well F U and up yours !!!!!!** I know you're reading this thread because I gave it to you in the depo and then emailed it to you later in the day because you could not even spell the website right. So walk into that federal courtroom with me and get ready for the biggest [train wreck emoticon] ever.
>
> You're losers and you lost the minute I walked into that courthouse in June, laid 350 bucks on the counter and told that nice court clerk, 'stamp this SOB sister, I'm suing these bastards.'

In addition to the above posts, Scroggin sent several emails to CBJ's counsel that were of a bad faith and harassing nature.[11]  For example, Scroggin emailed a picture of a shirtless, overweight man in overalls on a cell phone and noted that the man was his uncle calling him "after he got yall's motion to dismiss and for civility.  He made a good point, 'how the heck to you civilize the uncivil?'  I told him, heck if I know?????  You guys don't care if he shows up in his Sunday best

---

[11] Scroggin admitted in his surreply to CBJ's motion to dismiss and for order of civility that his emails were "intended to push the buttons" of lead counsel for CBJ.

overalls do you? He's a heck of a nice guy and won't say nothing rude to nobody. He even knows what the definition of 'is' is."  In another email, Scroggin told CBJ's counsel that he "can't wait to meet you in United States District Court where [you] will have a front row seat as a non attorney litigant puts on a first amendment argument clinic.  I even have an invitation to Larry Flynt outstanding and have been told by his office he is looking over my case.  I'm sure he [has] an opinion on the matter."[12]  In another email, Scroggin asked counsel for CBJ "[a]t what point do you look in the mirror and ask yourself, 'Why did we just not return a stinking phone call' & 'So this is what a legal train wreck and a nightmare means' ... I'll make sure this case gets the publicity it deserves.  But I'm sure you think I'm bluffing about that just like you thought I was about the Supreme Court and everything else you thought I was lying about in the deposition.  Welcome to the party pal, see you in Little Rock, remember, you sent the invitation."

Scroggin's attorney also forwarded to CBJ's counsel, with Scroggin's consent, the following email from Scroggin:

> Listen here, you tell that little witch that we will take 6500.00 and that
> expires at 5:00 PM today. I was a claims adjuster for 12 years and the
> second this reaches 10K and ins takes over the insurance company
> will immediately settle. On top of that I want a depo, I've already got
> people lined up to pay for the video and I'd crawl through 40 feet of

_____

[12] Scroggin also sent CBJ's counsel a link to a Larry Flynt deposition.

snow to make it I have to. I'm not scared of a depo and surly not of a trial. I know the law, I know I'm right, I know what to say and not to say and if she thinks for one second she stands a chance going against me she has another thing coming. We will freaking steam roll them at trial. I got [a state court judge] to overrule himself on his own motion to reconsider because I was so confident when I was arguing the law to him. We will mop the floor with them. The Supreme Court of the US is on my side, the fee shifting means I win no matter what, and I'm not afraid of a freaking thing. In fact I'll tell her it's not if we win but just how much. And I'll get this over her client's deducible and I don't care if I get 1K at trial and you 80K in legal fees, we are not settling for anything less than 6500.00 and she can shove her threats up her ass and she better get ready. I beat national loan recoveries at trial and I stipulated I owed every dime they were asking for at the beginning of the trial. The other sides jaw dropped when I said not to them and then challenged their standing. I know what I'm doing and I'm going to kick their ass all over the courtroom. I don't care if you forward this message to her, I really don't. It's 6500.00 by 5:00 or shove it up her ass and get ready for the depo and trial. I know what the hell I'm doing and I'm going to win and I'm going to win by a landslide.[13]

\* \* \*

There are, as previously noted, additional posts and emails in the record but Scroggin's conduct as outlined above illustrates the depth of Scroggin's dishonesty of belief or purpose, his dishonest and oppressive conduct, his hatred, ill will, and spirit of revenge towards CBJ before and after the filing of this action, and his intent to, at a minimum, annoy CBJ persistently with no legitimate purpose.  This action was never about Scroggin seeking legitimate redress for what he perceived

---

[13] Regarding the "6500.00" figure, Scroggin stated that his attorney "said they were never going over 5K at the time of our conversation so I was told to put that settlement offer in the email to look like we were willing to settle."

to be violations of statutes meant to protect consumers but was a vehicle for Scroggin to pursue a vendetta against CBJ and for his own entertainment (after successfully setting up CBJ into violating the FDCPA and AFDCPA) while at the same time generating attorney's fees for himself and his attorney/employer. Scroggin demeaned and abused the judicial process and he perverted the purposes of the FDCPA and AFDCPA.

## II.

Having determined that Scroggin brought this action in bad faith and for the purpose of harassment, the Court now turns to the question of the parties' entitlement to an award of attorney's fees and costs under 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(A) & (B), beginning with Scroggin.[14]

### A.

#### 1.

A debt collector who violates the FDCPA and AFDCPA is liable to the prevailing plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the court."  15 U.S.C. § 1692k(a)(3); Ark. Code

---

[14] Scroggin has not specifically moved for attorney's fees and costs.  Nevertheless, given that CBJ technically violated the FDCPA and AFDCPA and some courts, as will be seen, hold that a technical but harmless violation of the FDCPA makes an award of attorney's fees mandatory, the Court, for purposes of full appellate review, addresses the issue of Scroggin's and his former attorney's entitlement to attorney's fees and costs.

Ann. § 17-24-512(a)(3)(A).  Scroggin was not awarded any actual or statutory

damages and courts have taken different views on whether 15 U.S.C. § 1692k(a)(3)

requires success in enforcing liability for actual or statutory damages before a

plaintiff may be awarded attorney's fees and costs.  Compare *Tolentino v.*

*Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) ("The statutory language makes an

award of fees mandatory" where the FDCPA is violated), and *Emanuel v.*

*American Credit Exchange,* 870 F.2d 805, 809 (2nd Cir. 1989) (plaintiff is entitled

to attorney's fees and costs if he proved violation of FDCPA even if he had proven

no actual damages and received no statutory damages as the statute mandates such

an award in the case of any successful action), with *Johnson v. Eaton*, 80 F.3d 148,

151 (5th Cir. 1996) (FDCPA plaintiff who failed to enforce liability for actual or

additional damages against separate defendant did not meet the explicit

requirement of 15 U.S.C. § 1692k(a)(3) that she bring a "successful action to

enforce the foregoing liability," in order to receive attorney's fees and costs), and

*Graziano v. Harrison*, 950 F.2d 107, 114 n.13 (3rd Cir. 1991) (although the

FDCPA mandates an award of attorney's fees to consumer who prevails against a

debt collector, attorney's fees may be denied for plaintiff's "bad faith conduct").[15]

---

[15] In *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 598 n.16 (2010), the Supreme Court acknowledged but did not resolve the different views courts have taken about when, and whether, 15 U.S.C. § 1692k requires an award of attorney's fees.

The Court finds that Scroggin is not entitled to an award of attorney's fees and costs, agreeing with the Fifth Circuit that to be entitled to an award of attorney's fees and costs for having successfully brought an action to enforce a defendant's liability under the FDCPA, it is not enough that the plaintiff prove a technical violation of the FDCPA by the defendant if the violation will not support an award of actual or statutory damages in plaintiff's favor; rather, a prerequisite to an award of attorney's fees and costs against an FDCPA defendant is recovery of actual or statutory damages from that defendant. *Johnson*, 80 F.3d at 150-51.  See also *Dechert v. Cadle Co.*, 441 F.3d 474, 475 (7th Cir. 2006) ("The plaintiff was entitled to an award of fees and costs only if his suit could be characterized as a 'successful action to enforce the foregoing liability,' 15 U.S.C. § 1692k(a)(3), meaning liability for either actual or statutory damages").  "Reading the FDCPA as requiring attorney's fees to be paid in actions where the plaintiff fails to prove damages rewards lawyers for bringing suits to stop behavior that, by definition, has caused legal injury to no one." *Johnson*, 80 F.3d at 151.  In contrast, interpreting the FDCPA as requiring that a plaintiff must receive actual or statutory damages in order to receive attorney's fees and costs "will require attorneys to look for more than a technical violation of the FDCPA before bringing suit and will deter suits brought only as a means of generating attorney's fees." *Id*.

2.

Even if attorney's fees and costs are mandated if a plaintiff proves a

violation of the FDCPA or AFDCPA notwithstanding that he or she has not

received any actual or statutory damages, attorney's fees and costs may be denied

for a plaintiff's bad faith conduct. *Graziano*, 950 F.2d at 114 n.13. See also

*Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995) (fee award under

§ 1692k to plaintiff who proves a violation of the FDCPA is mandatory "in all but

the most unusual circumstances") (citing *Graziano*, 950 F.2d at 113-14)).

Scroggin's conduct as outlined in his posts and emails leaves no doubt that he

brought, and then pursued, this action in bad faith and for the purpose of

harassment and the Court accordingly finds that Scroggin is not entitled to an

award of attorney's fees and costs under 15 U.S.C. § 1692k(a)(3) or Ark. Code

Ann. § 17-24-512(a)(3)(A) even though it has been shown that CBJ technically

violated the FDCPA and the AFDCPA.

B.

1.

Concerning CBJ, the Court finds that because CBJ has affirmatively shown

that Scroggin brought this action in bad faith and for the purpose of harassment,

CBJ is entitled to an award of attorney's fees and costs under 15 U.S.C. §

-26-

1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B).  In so ruling, the Court

recognizes that some courts hold that a bad faith claim under 15 U.S.C. §

1692k(a)(3) cannot succeed where a violation of the FDCPA has been shown,

concluding that a plaintiff that shows a violation of the FDCPA is a victorious or

successful plaintiff even if no actual or statutory damages were awarded.  See, *e.g.,*

*Johnson*, 80 F.3d at 153 (separate defendant was found liable for violating FDCPA

but jury awarded no damages; "[plaintiff's] victory was limited to a determination

that [separate defendant] had violated her rights but was a victory nonetheless" and

court's finding that plaintiff did not bring claim in bad faith was supported by

record and not an abuse of discretion); *Emanuel*, 870 F.2d at 809 (although debtor

was not entitled to actual or statutory damages, his FDCPA action was successful

in that he established a violation of the FDCPA; defendant's "claim for malicious

prosecution cannot succeed unless the action subject of the claim is unsuccessful"

and it could not be found that action was brought in bad faith and for the purpose

of harassment).[16]  Other courts, however, hold that to be a "prevailing" or

---

[16] It appears that at least two members of the Supreme Court of the United States agree that a bad faith claim under 15 U.S.C. § 1692k(a)(3) cannot succeed where a technical but harmless violation of the FDCPA has been shown even though no damages are awarded.  See *Jerman*, 559 U.S. at 618 (noting that although the FDCPA guards against abusive suits and that suits brought "in bad faith and for the purpose of harassment" can lead to a fee award for the defendant, "these safeguards cannot deter suits based on technical—but harmless—violations of the statute.  If the plaintiff obtains a favorable judgment or a settlement, then by definition the suit will not have been brought in bad faith.") (citing *Emanuel*, 870 F.2d at 809) (Kennedy, J.,

"successful" plaintiff, one must receive formal relief or a settlement that provides similar relief.  See, *e.g., Dechert*, 441 F.3d at 475 (to be a "prevailing party" under FDCPA, one either must obtain a judgment that provides him with formal relief, such as damages, an injunction, or a declaration that he can use if necessary to obtain an injunction or damages later, or must obtain a settlement that gives him similar relief); *French v. Corporate Receivables, Inc.*, 489 F.3d 402, 403 (1st Cir. 2007) ("[s]uccessful plaintiffs [under the FDCPA] are those who have obtained an award of statutory or actual damages."); *Nagle v. Experian Information Solutions, Inc.*, 297 F.3d 1305 (11th Cir. 2002) ("ordinarily 'a plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail'" [under the Fair Credit Reporting Act] and, "[t]hus, for a 'prevailing party,' or a 'successful' party, to actually prevail, it is not enough that the court merely enter judgment") (quoting *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dept. of Health & Human Resources*, 532 U.S. 598, 603-04 (2001)).

The Court agrees that to be a "prevailing" or "successful" plaintiff, one must receive formal relief or a settlement that provides similar relief and that it is not enough that the court merely enter judgment.  Because Scroggin received nothing for his efforts other than a tainted and worthless determination that CBJ violated

---

joined by Alito, J., dissenting)).

the FDCPA and AFDCPA (tainted in that Scroggin obtained such a determination only by setting up CBJ into violating the FDCPA and AFDCPA and worthless in that Scroggin received no damages), Scroggin is not a "prevailing" or "successful" party–he did not bring a "successful action to enforce the foregoing liability."  15 U.S.C. § 1692k(a)(3); Ark. Code Ann. § 17-24-512(a)(3)(B).[17]

While Scroggin is not a prevailing plaintiff, CBJ, for its part, is arguably not a prevailing defendant even though it received a favorable judgment on Scroggin's claim for damages pleaded in his complaint.  *Cf. Johnson*, 80 F.3d at 153 (separate defendant not a prevailing defendant for purposes of attorney's fees under 15 U.S.C. § 1692k(a)(3) for suit alleged to have been brought in bad faith where separate defendant "violated two provisions of the FDCPA and cannot be said to have prevailed in any sense other than the fact that she avoided a monetary judgement").  In this respect, most courts appear to award attorney's fees under 15 U.S.C. § 1692k(a)(3) for a plaintiff's bad faith and harassment only to what can be considered a prevailing defendant.  See, *e.g., Montgomery v. Sessoms & Rogers, P.A.*, No. 5:12-cv-474-BO, 2013 WL 593949, *1 (E.D.N.C.  Feb. 15, 2013) (noting

---

[17] Scroggin argues that he was successful in that he forced CBJ to change its business model.  From a legal perspective, however, CBJ changing its business model did not thereby render Scroggin a prevailing or successful party. Rather, "[i]n *Buckhannon* [532 U.S. 598] the Supreme Court rejected the 'catalyst' theory, whereby a lawsuit that did not eventuate in any formal relief or settlement could be deemed 'successful' if it prompted the defendant to change his ways."  *Dechert*, 441 F.3d at 475.

that while 15 U.S.C. § 1692k(a)(3) does not specifically state that awards under

that section shall only be awarded to a prevailing defendant, "the Court is unaware

of, nor has defendant cited to, a case in which such relief has been granted to a

defendant who is not in fact a prevailing party").  But even if CBJ is technically

not a prevailing defendant (and assuming it may be that neither a plaintiff nor a

defendant is a prevailing party when considering an award of attorney's fees), for

all practical purposes, Scroggin lost and CBJ won, irrespective of any technical

status they may have as prevailing or nonprevailing parties.  One of the purposes of

15 U.S.C. § 1692k(a)(3) is "to thwart efforts of a consumer to abuse the statute,"

*Valez v. Portfolio Recovery Associates, Inc.*, 881 F.Supp.2d 1075, 1086 (E.D. Mo.

2012) (quoting *Parker v. Pressler & Pressler, LLP*, 650 F.Supp.2d 326, 347

(D.N.J. 2009)), and it would be a legal mockery to conclude that although Scroggin

flagrantly manipulated and abused the judicial process and the FDCPA and

AFDCPA in his vendetta against CBJ, thereby wasting valuable judicial resources,

he is nevertheless shielded from liability for attorney's fees and costs under 15

U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B) simply because of

CBJ's two technical violations of the FDCPA and AFDCPA that resulted in no

harm and only occurred because of Scroggin's trickery.[18]  Moreover, subjecting

Scroggin to liability for CBJ's attorney's fees and costs under 15 U.S.C. §

1692k(a)(3) and Ark. Code. Ann. § 17-24-512(a)(3)(B) will deter others who, in

Scroggin's words, believe that they can "set up" a debt collector into violating the

FDCPA or AFDCPA and use the judicial process to "maximize the retaliation, do

some damage and hopefully goad and/or force [the debt collector] to an actual

trial," "play the role of the beat down consumer" in court, and attempt to collect

damages and attorney's fees for technical and harmless violations, all while

"having the time of their life."

### 2.

Should it be determined that CBJ is not entitled to an award of attorney's

fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-

512(a)(3)(B), "a [federal] court has inherent power to award [attorney's] fees based

on a litigant's bad faith even without § 1692k(a)(3)." *Marx v. General Revenue

Corp.*, — U.S. —, 133 S.Ct. 1166, 1175-76 (2013) (citing *Chambers v. NASCO,*

---

[18] "Flagrant abuse of the judicial process can enable one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *Bonfiglio v. Nugent*, 986 F.2d 1391, 1394 (11th Cir. 1993) (internal quotation marks and citation omitted).  "The harm inflicted by vexatious litigation extends beyond systemic considerations" as the parties that are the subject of bad faith lawsuits "are forced to spend valuable time and other resources in defense of actions which clearly should never have been brought." *Id.* "Vexatious litigation by its very nature is designed to harass and to inflict emotional suffering upon those who are the targets, and it often achieves that goal. *Id.*

*Inc.*, 501 U.S. 32, 45-46 (1991)).  "By its nature as a court of justice, [a] district court possesses inherent powers 'to manage [its] affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Wescott Agri-Products, Inc. v. Sterling State Bank, Inc.*, 682 F.3d 1091, 1095 (8th Cir. 2012) (quoting *Chambers*, 501 U.S. at 43-46).  Having determined that Scroggin brought, and then pursued, this action in bad faith and for the purpose of harassment, the Court hereby invokes its inherent power as an alternative basis for awarding CBJ attorney's fees and costs. *Cf. B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002) (for purposes of imposing sanctions under inherent power of court, finding of bad faith does not require that legal and factual basis for action prove totally frivolous; where litigant is substantially motivated by vindictiveness, obduracy, or mala fides, assertion of colorable claim will not bar assessment of attorney's fees).

3.

The Court now turns to the determination of a reasonable award of attorney's fees to CBJ, which under the FDCPA and AFDCPA is "attorney's fees reasonable in relation to the work expended...." 15 U.S.C. § 1692k(a)(3); Ark. Code Ann. § 17-24-512(a)(3)(B).  In making such a determination, the Court will utilize the lodestar method outlined in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), which determines the number of hours reasonably expended on the subject matter

multiplied by a reasonable hourly rate. *Marez v. Saint-Gobain Containers, Inc.*,
688 F.3d 958, 965 (8th Cir. 2012). *Cf. Yepremyan v. GC Services LP*, No. 2:12-cv-
4380-SVW-RZ, 2013 WL 216054, *1 (C.D. Cal. Jan. 18, 2013) (in calculating
reasonable attorney's fees under 15 U.S.C. § 1692k(a)(3) on finding that action was
brought in bad faith and for the purpose of harassment, the district court must
determine the presumptive lodestar figure by multiplying the number of hours
reasonably expended on the litigation by the reasonable hourly rate); *Smith v.
Argent Mortg. Co., LLC*, No. 05-cv-02364-REB-BNB, 2008 WL 1840727, *2 (D.
Colo. April 22, 2008) (utilizing lodestar method in calculating award of attorney's
fees to defendant based on finding that plaintiffs brought FDCPA action in bad
faith and for the purpose of harassment).[19]  The court then considers other factors
to determine whether the loadstar amount should be adjusted upward or downward.
*Marez*, 688 F.3d at 965.  Such factors, commonly referred to as the *Johnson*
factors, see *Hensley*, 461 U.S. at 429-430 & n.3 (citing *Johnson v. Georgia
Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)), include (1) the time
and labor required; (2) the novelty and difficulty of the questions; (3) the skill
requisite to perform the legal service properly; (4) the attorney's preclusion of other

---

[19] The lodestar method likewise applies to the Court's alternative basis for awarding CBJ attorney's fees–its inherent power.

employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 n.3 (8th Cir. 2007).  Normally, many of these factors are "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

The *Johnson* factors encompass the "*Chriso* factors" that are relevant in determining a reasonable attorney's fee under Arkansas law.  See *Chrisco v. Sun Indus., Inc.,* 304 Ark. 227, 229, 800 S.W.2d 717, 718-19 (1990) (noting that the following factors are relevant in determining reasonable attorney's fees: (1) the experience and ability of the attorney; (2) the time and labor required to perform the service properly; (3) the amount in controversy and the result obtained in the case; (4) the novelty and difficulty of the issues involved; (5) the fee customarily charged for similar services in the local area; (6) whether the fee is fixed or contingent; (7) the time limitations imposed upon the client in the circumstances; and (8) the likelihood, if apparent to the client, that the acceptance of the particular

employment will preclude other employment by the attorney).  While courts

applying Arkansas law should be guided by the *Chrisco* factors, there is no fixed

formula in determining the reasonableness of an award of attorney's fees.  *Phelps*

*v. U.S. Credit Life Ins. Co.*, 340 Ark. 439, 442, 10 S.W.3d 854, 856 (2000).  In

addition, when a trial judge is familiar with the case and the services performed,

the fixing of a fee is within the discretion of the court even in the absence of proof

of the nature and extent of the attorney's services.  *Hartford Acc. & Indem. Co. v.*

*Stewart Bros. Hardware Co.*, 285 Ark. 352, 354, 687 S.W.2d 128, 129 (1985).

The individuals that worked on the case, the number of hours they billed,

and their hourly rates are as follows:[20]

| Name | Position | Hours | Rate | Total |
|------|----------|-------|------|-------|
| Rebecca Worsham | Associate | 137.275 | $200.00/hr. | $27,455.00 |
| Donn Mixon | Senior Partner | 35.8 | $250.00/hr. | $8,950.00 |
| Kelly Smith | Legal Assistant | 19.0 | $75.00/hr. | $1,425.00 |
| **Total** | | **192.075** | | **$37,830.00** |

As to the hourly rates proposed by counsel, a reasonable hourly rate is

generally the prevailing market rate, that is, the ordinary rate for similar work in

---

[20] Counsel did not specifically state the number of hours they billed but only provided the amount sought for each task.  However, dividing that amount by the hourly rate reveals the number of hours spent on each task.

the community where the case has been litigated.  *Moysis v. DTG Datanet*, 278

F.3d 819, 828 (8th Cir. 2002).  The party requesting the fee award bears the burden

of substantiating the requested rate as well as the hours expended.  *Hensley*, 461

U.S. at 433.

Worsham represented CBJ prior to and at trial with Smith's assistance, while

Mixon worked on the motion to dismiss and for order of civility with Worsham's

assistance.  Although Worsham is a relatively new attorney–having been admitted

to the Arkansas Bar in 2009–there is no dispute regarding her excellent legal skills.

Indeed, Scroggin himself expressed admiration for Worsham's legal abilities and

trial strategy, admitting that "[s]he came locked, loaded and ready...."  The Court

finds that an attorney possessing the experience and skills of Worsham could

reasonably command in Northeast Arkansas for this type of case under similar

circumstances an hourly rate of $200.00, and that hourly rates of $250.00 for

senior partner Mixon (who has over 35 years of experience) and $75.00 for legal

assistant Smith are likewise reasonable.  *Cf. All-Ways Logistics, Inc. v. USA Truck,

Inc.*, No. 3:06-cv-0087, 2007 WL 4285410, *10 (E.D. Ark. Dec. 4, 2007) (this

Court determined that an attorney possessing the experience and skills of counsel

for plaintiff could reasonably command in Northeast Arkansas for that type of case

under similar circumstances an hourly rate of $300.00 and that an hourly paralegal

rate of $90.00 per hour was in those circumstances reasonable as well), *aff'd* 583

F.3d 511 (8th Cir. 2009); *Shaw v. Allied Interstate*, No. 2:12-cv-02040, 2012 WL

6625380 (W.D. Ark. Dec. 19, 2012) (in FDCPA action, awarding $250.00 per

hour, $200.00 per hour, and $150.00 per hour respectively to attorneys, and $75.00

for a paralegal); *Farris v. NCO Fin. Sys., Inc.*, No. 11-cv-4042, 2011 U.S. Dist.

LEXIS 129564 (W.D. Ark. Nov. 8, 2011) (in FDCPA action, awarding $250.00

per hour for a partner in law firm, $150.00 per hour for an associate, and $75.00

per hour for a paralegal).

The Court now turns to a review of the individual time entries in light of the

relevant factors.  The Court first notes that counsel for CBJ seek reimbursement for

time associated with their motion to dismiss and for order of civility and their

request for a hearing on their motion.  Specifically, Mixon seeks $8,950.00 and

Worsham seeks $2,025.00.  Scroggin objects to CBJ's request for attorney's fees

regarding a motion that was denied.  In this respect, Scroggin requests that the

Court award him a paralegal rate of $75.00 per hour "to research and respond to

this utter garbage pleaded by Ms. Worsham...."[21]

Although the Court denied CBJ's motion to dismiss and for order of civility

---

[21] Scroggin states he is suing Worsham and the Mixon Law Firm for libel and is "filing
bar complaints...."

without a hearing, CBJ's motion was instrumental in establishing Scroggin's bad faith, harassment, and lack of damages.  In addition, Scroggin's bad faith and harassment beget CBJ's motion.  Accordingly, the Court will not deny fees incurred in association with their motion to dismiss and for order of civility entirely but will reduce counsels' fee requests by one half.  See *Marez*, 688 F.3d at 966 (noting that there is no precise rule or formula for making fee determinations in cases with only partial success and a district court may simply reduce the award to account for the plaintiff's limited success).  In addition, the Court denies the fees Mixon incurred in requesting a hearing.  As so reduced, Mixon is awarded $4,462.50 in attorney's fees and Worsham is awarded $1,012.50 in attorney's fees for the time associated with their motion to dismiss and for order of civility. Scroggin's request for paralegal fees is denied.

Concerning the remaining time entries, Scroggin does not specifically dispute any of these time entries and the Court finds that the number of hours spent by CBJ's counsel on this action was reasonable.[22]  Scroggin deliberately and

---

[22] Scroggin does state, in a conclusory manner, that he "has major concerns about the validity of the submitted legal fees" and complains that lead counsel for CBJ would not submit to a deposition.  He further states that he was "ignored" by counsel for CBJ, that his emails were not returned, and that his requests for more information went unanswered.  Scroggin, however, has not attached for the Court's review the emails he states went unanswered and he does not describe the requests for more information he states he directed to CBJ's counsel.  Scroggin also never sought relief from the Court for the alleged lack of cooperation of CBJ's counsel.

vexatiously multiplied the proceedings, thereby requiring significant time and effort on the part of CBJ's counsel to the defense of Scroggin's claims that would not otherwise have been necessary.[23]  Scroggin essentially lost this action and counsel for CBJ is not seeking attorney's fees for any matters for which attorney's fees should not be awarded.  Accordingly, the Court approves the remaining uncontested time entries, which total $25,430.00 in attorney's fees and $1,425.00 in paralegal fees.

In sum, the Court awards CBJ a total of $30,905.00 in attorney's fees and $1,425.00 in paralegal fees.  The Court additionally finds that the requested costs are reasonable and accordingly awards CBJ its costs in the amount of $890.32.

### III.

One final matter concerns an Offer of Judgment CBJ offered to Scroggin. On June 14, 2013, CBJ offered to pay Scroggin $2,500.00 in an Offer of Judgment made pursuant to Fed.R.Civ.P. 68(d).  Scroggin rejected CBJ's offer and proceeded to trial where he received nothing.

---

[23] In an affidavit attached to Scroggin's surreply to CBJ's motion to dismiss and for order of civility, Scroggin admits that it is "100% true" that he "advise[s] others to run up the other sides legal bills and be a complete nightmare and turn it into a circus." Aff. ¶ 23.  Scroggin certainly took his own advice in this action and stated that what he "ha[s] been doing is put[ting] a deep dent in the pocket book of this agency [CBJ]."  Although his affidavit is not signed, Scroggin relied upon the unsigned affidavit in contesting CBJ's motion to dismiss and for order of civility and he does not dispute that the statements in the affidavit are his.

If it is determined that CBJ is not entitled to an award of attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B) or, alternatively, pursuant to the Court's inherent power, costs should nevertheless be awarded to CBJ under Rule 68(d), which provides that "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made."  See also *Marx*, — U.S. —, 133 S.Ct. at 1171 n.2 ("Under Rule 68(d), if a defendant makes a settlement offer, and the plaintiff rejects it and later obtains a judgment that is less favorable than the one offered her, the plaintiff must pay the costs incurred by the defendant after the offer was made.").  Accordingly, in the absence of attorney's fees and costs, the Court awards CBJ $218.55 in costs it incurred after its Rule 68(d) Offer of Judgment was rejected.

## IV.

For the foregoing reasons, the Court grants in part and denies in part CBJ's motion for attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) and Ark. Code Ann. § 17-24-512(a)(3)(B) or, alternatively, pursuant to the Court's inherent power [doc.#58].  The Court hereby awards CBJ attorney's fees in the amount of $30,905.00, paralegal fees in the amount of $1,425.00, and costs in the amount of $890.32.  Alternatively, if it is determined that CBJ is not entitled to an award of

attorney's fees and costs, the Court hereby awards CBJ costs in the amount of

$218.55 pursuant to Fed.R.Civ.P. 68(d).

IT IS SO ORDERED this 20th day of September 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE